# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00603-CV

Sarah Ann Miller, Appellant

v.

Reese Wynn Miller, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-FM-11-004941, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sarah Ann Miller appeals the trial court's order modifying a divorce decree to give

appellee Reese Wynn Miller the right to designate the primary residence of their child, R.H.M.[1]  In

three issues, Sarah challenges the trial court's order, contending that the trial court abused its discretion

(1) by concluding that a material and substantial change in circumstances supported the modification;

(2) in concluding that granting Reese the right to designate the primary residence of R.H.M. was in

R.H.M.'s best interest; and (3) in awarding Reese appellate attorneys' fees.  We will affirm.

## BACKGROUND

The parties were divorced in December 2012 pursuant to a jury verdict entered in

July 2012.  As part of the final decree of divorce, Sarah was granted the exclusive right to designate

---

[1]  Because the Millers' child is under 18, we will refer to him only by his initials.  We will
refer to Sarah Ann Miller and Reese Wynn Miller by their first names for the sake of clarity.

the primary residence of R.H.M. in Travis County, the counties contiguous to Travis County, or in Sacramento, California, or the counties contiguous thereto. Sarah chose to relocate R.H.M. to Sacramento. Among other things, the original divorce decree ordered Sarah to pay all costs of Reese's travel to and from California to exercise his rights to possession of R.H.M.

At the time of the jury trial that gave rise to the original divorce decree, Sarah had secured an apartment for her and R.H.M. in Sacramento and maintained employment with a salary of $125,000 per year. Although Sarah's income did not change before the modification at issue in this appeal, her living arrangements did. Soon after moving to Sacramento, Sarah moved in with her aunt.[2] The rent that Sarah agreed to pay her aunt was significantly less than the rent she was paying at her apartment. Sarah then entered into a romantic relationship with Travis Bonnano. Sarah began staying some nights at Bonnano's home before she and R.H.M. moved in with Bonnano full time.

In addition to her change in residence, Sarah also experienced financial difficulties after moving to California. Although Sarah had testified at the jury trial that her move to California would result in increased income and a better position within her company, these results never materialized. Instead, she ultimately filed for bankruptcy and listed as debts payments owed to Reese for his travel to California and rent owed to her aunt. The trial court found that Sarah owed Reese $40,000 for travel expenses and for failing to reimburse him for payments made to prevent foreclosure of their marital home in Lago Vista, Texas. Based on testimony at the modification

_____

[2] Sarah contends that the trial court erred in considering her move from her apartment to her aunt's home because this move occurred before the trial court signed the original divorce decree. However, the original divorce decree came as a result of a jury verdict. Sarah testified to the jury that she and R.H.M. were living in her apartment. The fact that the divorce decree was not formally signed until some six months later does not change the testimony before the jury when it reached its verdict.

2

proceeding, after her bankruptcy Sarah's normal spending exceeded her income, even without the expense of rent or a mortgage.

Although presented with conflicting testimony, the trial court also found that the Millers' ability to co-parent R.H.M. declined precipitously after the divorce and that Sarah was largely at fault for this decline. As proof, the trial court cited evidence that Sarah did not freely share information regarding R.H.M. with Reese and did not always consult him in parenting decisions. In fact, according to the trial court's findings, Sarah had specifically told Reese that she would not co-parent R.H.M. with him. The court also found that Sarah had made derogatory comments concerning Reese in front of R.H.M. and communicated negative facts concerning Reese's past alcohol use to R.H.M.'s school and community in Sacramento. In addition, R.H.M. experienced some educational decline, which the trial court attributed to a change in his daycare arrangements and the timing of Sarah's decision to move in with Bonnano. Finally, testimony indicated that Bonnano used profanity and derogatory remarks twice toward Reese in R.H.M.'s presence and that Sarah had injected Bonnano's presence into their physical exchange of R.H.M., unnecessarily escalating tensions among everyone involved.

The trial court found that circumstances had materially and substantially changed since the initial divorce decree, including (1) Sarah's declining financial situation, which rendered Sarah unable to meet the financial obligations imposed upon her by the divorce decree so that Reese could exercise his possessory rights; (2) Sarah's change in living arrangements and inability to provide R.H.M. with a stable home; (3) R.H.M.'s academic decline; (4) the inability of Sarah to co-parent with Reese; and (5) the declining nature and quality of Reese's contact with R.H.M. due

3

to decisions made by Sarah. The trial court also found that modification would be in R.H.M.'s best interest and granted Reese the right to designate the primary residence of R.H.M. in Travis County or contiguous counties. Finally, after reopening the evidence to hear testimony from Reese's attorney, the trial court granted Reese conditional appellate attorneys' fees of $30,000. It is from the trial court's final modification order that Sarah now appeals.[3]

## DISCUSSION

Sarah raises three issues on appeal. She argues that the trial court abused its discretion (1) in concluding that a material and substantial change had occurred to justify modification, (2) in concluding that granting Reese the right to designate R.H.M.'s primary residence in Texas was in R.H.M.'s best interest, and (3) in conditionally awarding Reese appellate attorneys' fees. We will address each of these issues in turn after explaining the standard of review that will guide our analysis.

### Standard of Review

We review a trial court's decision to modify a conservatorship order for a clear abuse of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The abuse-of-discretion standard overlaps with traditional sufficiency standards of review in family law cases, creating a hybrid analysis. *Id.* at 587–88. We therefore engage in a two-pronged inquiry to decide whether the trial court abused its discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its

---

[3] This Court stayed the effect of the trial court's modification order pending this appeal. The Court's stay was issued on October 3, 2014, shortly after Sarah filed her notice of appeal. The parties did not complete their briefing to this Court until August 20, 2015. The stay is now lifted.

application of discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.—Austin 2002, no pet.). The focus of the first inquiry is the sufficiency of the evidence. *Zeifman*, 212 S.W.3d at 588. The reviewing court must then decide whether, based on the evidence before it, the trial court made a reasonable decision. *Id.* As a result, legal and factual sufficiency are not independent grounds of error in modification cases; rather, they are relevant factors in deciding whether the trial court abused its discretion. *In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.).

To determine whether there is legally sufficient evidence, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence contrary to the findings unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's findings only if they are so contrary to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When the evidence conflicts, we must presume that the factfinder resolved any inconsistencies in favor of the order if a reasonable person could do so. *Wilson*, 168 S.W.3d at 821. The trial court does not abuse its discretion if evidence of a substantive and probative character exists in support of its decision. *Zeifman*, 212 S.W.3d at 587. We recognize that the trial court is in the best position to observe and assess the witnesses and their demeanor, and we give great latitude to the trial court in determining the best interest of a child. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). As a result, the mere fact that an appellate court might decide the issue differently than the trial court does not establish an abuse of discretion. *Zeifman*, 212 S.W.3d at 587.

5

**Material and Substantial Change**

The primary focus of Sarah's arguments against the trial court's order is that the trial court abused its discretion in concluding that a material and substantial change had occurred since the original decree to justify changing conservatorship. Specifically, Sarah challenges the legal and factual sufficiency of the evidence that (1) Sarah's financial situation changed, (2) Sarah's ability to provide an independent home has changed, (3) R.H.M.'s academic progress has changed, and (4) Reese's contact with R.H.M. or the Millers' ability to communicate and co-parent has changed. Sarah also complains that her move into her fiancé's home should not be considered because it occurred after Reese sought modification.

A trial court may modify a conservatorship order if the "circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the time of the rendition of the divorce decree and if modification is in the child's best interest. Tex. Fam. Code § 156.101(a)(1)(A). A court's determination of whether a material and substantial change of circumstances has occurred is not based on rigid rules and is fact-specific. *Zeifman*, 212 S.W.3d at 593. Material changes may be established by either direct or circumstantial evidence. *In re T.M.P.*, 417 S.W.3d at 564. They have included (1) the marriage of one of the parties, (2) poisoning of a child's mind by one of the parties, (3) a change in home surroundings, (4) mistreatment of a child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody. *Id.* (citing *In re A.L.E.*, 279 S.W.3d at 429). Recent examples from this Court have included evidence of a plan to marry, moving in with a significant other, a plan to return to school, and moving of residences. *Downey v. Downey*, No. 03-12-00037-CV, 2014 WL 1362642,

6

at \*4 (Tex. App.—Austin Apr. 1, 2014, no pet.) (mem. op.). Whether a particular change is material and substantial depends on the circumstances of each case. *In re T.M.P.*, 417 S.W.3d at 564.

The evidence presented to the trial court was legally and factually sufficient to support the trial court's conclusion that a material and substantial change had occurred in this case. Sarah couches one of her arguments as whether there is legally and factually sufficient evidence that she is unable to provide an "independent home." Whether Sarah is able to provide an independent home for R.H.M., however, is not really the issue. The issue is whether there has been a material and substantial change in R.H.M.'s home surroundings since the divorce. The evidence demonstrates that there has.

The evidence shows that, since the time of the jury trial, Sarah has changed R.H.M.'s home at least twice. At the time of the jury trial, Sarah maintained her own apartment where she and R.H.M. lived. Less than six months later, and before the original divorce decree was signed, Sarah and R.H.M. moved in with Sarah's aunt. Although Sarah testified that she had agreed to pay her aunt $500 per month in rent, she admitted that she had not paid the agreed rent every month, and Sarah's later bankruptcy filings listed a debt to her aunt for rent payments. Sarah then began staying some nights with Travis Bonnano, before moving herself and R.H.M. in with Bonnano as a permanent living arrangement. Sarah and Bonnano testified concerning their plans to marry, and Sarah did not pay rent to Bonnano. These undisputed facts alone are legally and factually sufficient to support the trial court's finding that Sarah has not provided a stable home for R.H.M.[4] because

---

[4] The trial court found that Sarah had changed R.H.M.'s residence four times since leaving Texas. However, the trial court's finding that Sarah has failed to provide R.H.M. with a stable home does not depend on the exact number of times Sarah has changed R.H.M.'s residence.

7

they demonstrate that R.H.M.'s "home surroundings" have changed. *See Downey*, 2014 WL 1362642, at *3–4.

In addition, the evidence is also legally and factually sufficient to support the trial court's finding of a material and substantial change in Sarah's financial condition such that she cannot meet the requirements of the divorce decree or provide a stable home for R.H.M. The original divorce decree ordered Sarah to pay for Reese's air travel to California if she decided to move R.H.M. there, so that Reese could exercise his possessory rights. The court also ordered Sarah to pay support, including making payments toward the mortgage of their marital home in Lago Vista. According to Reese, Sarah became late in her reimbursements of his travel and late in her payments toward the mortgage. The latter forced Reese to make personal payments to cover amounts owed by Sarah to prevent the foreclosure of the marital home. Sarah ultimately filed for bankruptcy and sought to discharge her debts to Reese, including for travel to California and for child support. Reese testified at the modification hearing that Sarah owed him $40,000. Sarah disputed that she owes Reese this amount.[5] Nevertheless, she admitted to filing for bankruptcy and to the fact that, although she lives rent and mortgage-free in California, she pays more every month in expenses than she makes from her job. Thus, although Sarah is correct that there has been no change in her income since the time of the divorce decree, there has been a change in her ability to make financial ends meet such that she cannot afford to live on her own with R.H.M. while also making timely payments

---

[5] Sarah has moved to strike the supplemental record filed in this Court, at Reese's request, on October 7, 2015. The supplemental record contains an order from the trial court dated September 10, 2015. In deciding this case, we have not considered the contents of this order and therefore dismiss Sarah's motion to strike the October 7, 2015 supplemental record as moot.

required in the divorce decree—payments that were part of the conditions the trial court set to allow her to move with R.H.M. to California in the first place.

The trial court's findings on the changes in R.H.M.'s home surroundings and Sarah's financial condition are supported by legally and factually sufficient evidence, and they are sufficient in and of themselves to support the trial court's finding that a material and substantial change has occurred such that a modification of conservatorship is justified. Given these facts, we cannot conclude that the trial court abused its discretion in concluding that a material and substantial change has occurred. This is true even without considering the other factual bases for the trial court's finding that a material and substantial change had occurred. Accordingly, we overrule Sarah's first issue. Having concluded that the evidence is legally and factually sufficient to support the trial court's finding that a material and substantial change had occurred and that the trial court's decision based on this evidence was reasonable, we now turn to an analysis of the trial court's finding that a modification of conservatorship was in R.H.M.'s best interest. *See* Tex. Fam. Code § 156.101(a)(1)(A).

**Best Interest**

Sarah next contends that the trial court abused its discretion by finding that it is in R.H.M.'s best interest to be moved to Texas from his "wonderful community" in California. Included within this general complaint are Sarah's assertions that the trial court did not consider factors relevant to child-relocation decisions and that the evidence was legally and factually insufficient to support the trial court's best-interest finding.

The oft-repeated list of factors a court looks to when deciding a child's best interest includes: (1) the desires of the child; (2) the emotional and physical needs of the child now and in

9

the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In addition to the *Holley* factors, the Texas Supreme Court has identified additional factors a trial court may consider when the court's decision involves relocation issues: (1) the relationship with and presence of extended family; (2) the presence of friends; (3) the presence of a stable and supportive environment; (4) the custodial parent's improved financial situation and ability to provide a better standard of living for the child; (5) the positive impact of the custodial parent's emotional and mental state on the child; (6) the non-custodial parent's right to have regular and meaningful contact; (7) the ability of the non-custodial parent to relocate; and (8) the ability of the non-custodial parent to adapt his or her work schedule to the child. *Lenz v. Lenz*, 79 S.W.3d 10, 15–18 (Tex. 2002). A court may also consider the child's stability and the need to prevent constant litigation over custody. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000). There is no bright-line test for whether these factors militate in favor of modification; the analysis in this context is necessarily fact-driven. *Lenz*, 79 S.W.3d at 18–19.

Sarah appears to take the position that without discussing each factor in its best-interest analysis, the trial court has necessarily abused its discretion. Likewise, Sarah challenges the legal and factual sufficiency of each of the trial court's findings of fact relating to its best-interest

10

finding. These arguments presuppose that if the evidence is insufficient to support a particular finding, then the trial court has committed reversible error. Or, if the trial court has failed to make a finding concerning a particular factor, the argument continues, then the trial court has erred. We do not believe either argument is correct, and Sarah has not cited any case law to support these propositions. Implicit in the fact that there is no bright-line test for determining the best interest of the child is the idea that a trial court's findings of fact and conclusions of law need not include a consideration of every factor listed above. Nor is the conclusion that there is insufficient evidence to support a particular factor fatal to a trial court's best-interest finding. Instead, we will, as we must, examine the record under an abuse-of-discretion standard to determine whether the trial court's decision has any reasonable basis in the evidence before it at trial, such that it could have reasonably concluded that a modification of R.H.M.'s residence was in his best interest. With that construct in mind, we now turn to an examination of the evidence.

As described above, the evidence in this case is legally and factually sufficient to support the trial court's findings that Sarah did not provide a stable home for R.H.M. after she moved him to California and that at least some explanation for this lack of stability is her financial difficulties. Thus, while Sarah complains that the trial court did not take into account how stability factored into the best-interest analysis and that R.H.M.'s stability is promoted only by remaining in California, the evidence belies that claim. Although moving R.H.M. from California to Texas will uproot R.H.M. from one home to another, that is true of any modification in which a child's residency is changed. The more salient consideration is whether such a move will ultimately result in a more stable home for R.H.M. As the trial court concluded, the evidence demonstrates that the

11

court gave Sarah the opportunity to establish a stable home in California, but she moved R.H.M. several times, either because of her financial shortcomings or a romantic relationship, or both. The evidence also demonstrates that Reese has taken great pains to maintain R.H.M.'s friendships and the life he knew in Texas before he moved to California, through friends, extended family, and church involvement in Texas during their time together on visits.

Although we have no doubt that Sarah loves R.H.M. and has done her very best to provide a safe and happy home for him, those are not the only factors a trial court may consider. The trial court can and should also consider whether each parent is allowing and promoting the other parent's relationship with the child. This co-parenting relationship between divorced parents is essential to the well-being of the child. And the evidence demonstrates that Sarah has had difficulty co-parenting, while Reese has gone out of his way to encourage R.H.M.'s contact with and good opinions of Sarah during their visits. Reese testified that his relationship with R.H.M. has declined because of decisions Sarah has made since her move. This includes testimony that Sarah has limited Reese's communications with R.H.M. since the time Sarah was held in contempt for violating the original divorce decree. Reese testified that if Sarah learned that Reese had spoken to R.H.M. while he was at after-school care, then she would not allow them to speak further later in the day. As an example of the disparity between the parents in their allowance of communication between R.H.M. and the non-possessory parent, Reese introduced evidence showing that in a period of 61 days while in Sarah's care, R.H.M. was allowed to speak to Reese on the phone for a total of 56 minutes; the evidence also showed that while in Reese's care for 64 days, R.H.M. was allowed to speak to Sarah

12

for a total of 227 minutes. Reese testified that if the court allowed R.H.M. to live with him in Texas, he would insist that R.H.M. stay in regular, significant contact with Sarah.[6]

Sarah's own testimony showed that when Reese contacted her by text to ask if he could speak to R.H.M., she considered Reese's behavior harassment, even if he sent her only one text message per day. She also testified that she would not force R.H.M. to speak to Reese. Reese testified that Sarah told him during co-parenting counseling that she would not co-parent with him and that she quit attending co-parenting counseling with Reese after three sessions. Although the evidence shows that, as a general rule, Sarah shares information with Reese concerning R.H.M., she admitted that she makes an executive decision about what information she needs to share with Reese.

Finally, the testimony suggested that Sarah has not been willing to foster a good relationship between Reese and R.H.M.'s community in California. For example, Sarah provided R.H.M.'s school with negative information concerning Reese's past difficulties with alcohol. In addition, Sarah injected the presence of her boyfriend and later fiancé Bonnano into their physical exchanges of R.H.M. On two occasions (one not related to an exchange), Bonnano used profanity directed at Reese in R.H.M.'s presence.

In contrast, there was evidence before the trial court that Reese had changed dramatically since the time of the divorce decree, not only in his abstinence from alcohol but also in his willingness to co-parent with Sarah and in his sole focus on the best interest of R.H.M.

---

[6] Sarah contests much of Reese's testimony concerning their co-parenting. The trial court, however, is permitted to make reasonable inferences from the evidence it heard given its fact-finding role in evaluating witness credibility and demeanor. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Although he lives in Texas, Reese regularly volunteered at R.H.M.'s school in California. When R.H.M. struggled with reading in school, Reese enrolled R.H.M. in a program while in Texas that helped bring R.H.M.'s reading proficiency back to an appropriate level. Reese also maintained the life for R.H.M. that was left behind when he moved to California, allowing R.H.M. to maintain friendships and community involvement in Texas. Still more importantly, Reese demonstrated that even while R.H.M. was in his possession, he would promote R.H.M.'s relationship with Sarah, which he did consistently.

Sarah complains that the trial court's order is not in R.H.M.'s best interest because he has a "wonderful community" in California. In addition, Sarah complains that she will be put through great hardship if R.H.M. is returned to Texas. Sarah testified that she would move back to Texas if the trial court returned R.H.M. to Texas. In doing so, Sarah asserts that she will lose both her job[7] and her relationship with her fiancé, Bonnano, who testified that he will not move to Texas with her. While the impact on a parent's emotional and mental state and the ability to relocate are factors a trial court may consider, they do not trump the weight of the other myriad factors that have been outlined by courts for consideration in the best-interest analysis.

At the end of the day, we have to decide whether the trial court abused its discretion based on the record before it. And, based on the record before us, we cannot say that the trial court abused its discretion in concluding that it is in the best interest of R.H.M. for Reese to be given the right to designate R.H.M.'s primary residence. Accordingly, we overrule Sarah's second issue.

---

[7] There is also evidence in the record that Sarah held the same job at the same salary while she lived in Texas before the divorce.

14

**Appellate Attorneys' Fees**

Finally, Sarah asserts that the trial court abused its discretion in ordering that Reese recover $30,000 in appellate attorneys' fees from her in the event he successfully defends her appeal.

Rule 270 of the Texas Rules of Civil Procedure provides that a trial court may permit additional evidence when it clearly appears necessary to the administration of justice. Tex. R. Civ. P. 270. In deciding whether to grant a motion to reopen the evidence, a trial court considers whether (1) the moving party showed due diligence in obtaining the evidence, (2) the proffered evidence is decisive, (3) reception of the evidence will cause undue delay, and (4) granting the motion will cause injustice. *Hernandez v. Lautensack*, 201 S.W.3d 771, 779 (Tex. App.—Fort Worth 2006, pet. denied). This Court has written that these "are just factors to be considered" and that a trial court's ruling on a motion to reopen should rarely be disturbed even if none of the factors is present. *Cox v. Wilkins*, No. 03-05-00110-CV, 2006 WL 821202, at *3 (Tex. App.—Austin Mar. 31, 2006, pet. denied) (mem. op.). Consistent with this holding, if the trial court made a reasoned decision based on the record before it in reopening the evidence, we will not disturb it.[8]

Admittedly, the record before us presents a close call. The record shows that Reese did not request attorneys' fees for fees incurred at trial or on appeal during the modification hearing, which he initiated. And, upon the trial court's notification to the parties that it intended to modify the divorce decree in his favor but that each party would bear his or her own attorneys' fees, Reese submitted a proposed judgment to the trial court reflecting that each party would bear his or her own

---

[8] The parties have not cited and we have not found a case in which an appellate court has reversed a trial court's decision on whether to reopen the evidence for consideration of attorneys' fees.

15

fees.[9] Only after Sarah filed her notice of appeal and sought and was granted a stay by this Court did Reese file his motion seeking a modification of the trial court's order to allow him recovery his trial and appellate attorneys' fees.[10] There was no evidence presented at the hearing on Reese's request to reopen the evidence on attorneys' fees of the four factors outlined by the courts.

Nevertheless, it is apparent from the record that the trial court made a reasoned decision that was within its discretion. Again, Reese sought to reopen the evidence and to recover his trial and appellate attorneys' fees. The trial court, however, denied Reese's request for his attorneys' fees at trial while granting conditional appellate attorneys' fees. Based on these actions by the trial court, it is apparent that the trial court weighed the merits of Reese's requests and found one lacking while finding in favor of the other. Considering the record before the trial court, we cannot say that the trial court abused its discretion in concluding that while Reese failed to exercise diligence in requesting his trial attorneys' fees, he exercised diligence in requesting his appellate fees. Likewise, the trial court would have been within its discretion to conclude that the evidence on appellate attorneys' fees was decisive and that the reception of the evidence would not cause undue delay or an injustice. Based on the record before us, we cannot conclude that the trial court abused its discretion in awarding Reese conditional appellate attorneys' fees.

---

[9] Sarah contends that Reese's submission of a final judgment to the trial court in a form in which each party was to bear its own attorneys' fees waived his later request to reopen the evidence on attorneys' fees. We disagree. Reese arguably had no reason to consider raising appellate attorneys' fees until the possibility of an appeal was raised, and under the circumstances presented to us, we cannot conclude that he waived his request for appellate attorneys' fees.

[10] The trial court denied Reese's request for recovery of his trial attorneys' fees, and Reese has not appealed the court's order.

16

We therefore overrule Sarah's third issue and affirm the trial court's award of conditional appellate attorneys' fees to Reese.

**CONCLUSION**

Having overruled each of Sarah's issues for the reasons explained, we affirm the trial court's modification order.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   November 4, 2015