

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |
|---|---|
| § | No. 08-19-00008-CV |
| § |  |
| IN THE INTEREST OF S.G., A CHILD § | Appeal from the |
| § | 322nd District Court |
| § | of Tarrant County, Texas |
| § | (TC# 322-521747-12) |
| § |  |

## MEMORANDUM OPINION[1]

Robert Greene ("Father") and Timeekah L'Sher Lane ("Mother") are the parents of S.G., a minor child. Father appeals from the trial court's order granting Mother's petition to modify a prior order in a Suit Affecting the Parent-Child Relationship on issues involving both conservatorship and child support. Father contends that the trial court abused its discretion by (1) deviating from the statutory child support guidelines, (2) by not providing him with his preferred possession schedule in light of his employment as a fireman, and (3) by giving Mother the exclusive right to make decisions about the "child's hair, schooling, and extracurricular activities." Father also contends that the evidence was insufficient to support the trial court's decision ordering

---

[1] *See* TEX.R.APP.P. 47.4. This case was transferred to us from the Second Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We apply the precedents from that court where they might conflict with our own. TEX.R.APP.P. 41.3.

him to pay $2,500 of Mother's attorney's fees.   We affirm.

## I. BACKGROUND

### A.   The Prior Order

On October 31, 2013, the trial court issued a Final Order in a Suit Affecting the Parent-Child Relationship appointing Father and Mother as joint managing conservators of S.G. and giving Mother the exclusive right to designate S.G.'s residence.   In light of Father's employment as a fireman, the trial court included an "expanded standard possession" schedule in the Final Order, allowing Father to pick up S.G. from school any day that he was not working and to return her to Mother's home by 6:30 p.m. that same day.   In addition, the trial court gave Father the right to possession of S.G. on the first, third, and fifth weekends of each month throughout the school year, beginning at the time her school was dismissed on Friday, and ending at the time school resumed after the weekend.   The court also gave Father possession of S.G. each Thursday, beginning at the time S.G.'s school was dismissed and ending at the time her school resumed on Friday.

The original Final Order calculated Father's net resources at $4,208.80, and set child support at 17.81 percent of that amount, obligating Father to pay $750 monthly to Mother.   The trial court deviated from the standard statutory guideline for setting child support, which would normally be 20 percent for the support of one child, "due to the amount of time that [Father] spends with the child."

### B.   Mother's Petition to Modify and Father's Counter-Petition

On September 21, 2016, Mother filed a petition to modify the trial court's prior order, seeking a modification of Father's monthly child support obligations.   In part, her request was based on the fact that S.G. had been attending a private school, and that she anticipated the monthly

2

tuition cost would increase from $905 to $1,300 a month in 2018. Although Mother had previously been solely responsible for paying the child's tuition, she requested that Father be ordered to pay 50 percent of the child's school tuition, in addition to his monthly child support obligation. In an amended petition, Mother also requested the court modify the possession schedule, seeking to replace the previously ordered expanded possession order with a standard possession order. Father answered and filed his own counterpetition to modify. He sought a "standardized fireman schedule" for his possession of S.G. during the school year, and further requested that the child support obligation be terminated or otherwise decreased due to a change in his circumstances.

### C. The Trial

At a bench trial, Mother testified that Father had violated the existing expanded possession order. She specifically complained that he had: (1) not afforded Mother the right of first refusal to have possession of the child when he was not available due to his work schedule; (2) he allowed other individuals, including Father's girlfriends, coworkers, and his brother who was a convicted felon, to take care of S.G. when he was working; (3) he caused S.G. to be tardy on four or five occasions during the most recent school year; and (4) he caused S.G. to miss some of her extra-curricular activities during Father's periods of possession. In addition, she also testified that Father generally made it difficult for her to communicate with S.G. during his periods of possession. In particular, Father had refused to allow S.G. to use an iPad that Mother had purchased for S.G. to contact her when she was in Father's possession.

S.G. had been attending St. Joseph's Catholic School (a private school) in accordance with the parties' prior agreement. Mother, however, wished to enroll S.G. in Bishop Dunne Catholic School (another private school), when S.G. entered middle school during the 2018 to 2019 school

3

year. Mother, who is an alumnus of Bishop Dunne, testified about the benefits of enrolling S.G. in that school, noting that it had better course offerings than St. Joseph's, including more college prep classes and French classes, as well as better extracurricular activities. Mother also testified that Bishop Dunne was closer to where she was employed and that S.G. had already been accepted at Bishop Dunne. Mother acknowledged that the tuition cost at Bishop Dunne was more than that of St. Joseph's, (but that the tuition cost could be reduced if they informed the school of Father's status as a member of the Catholic Church). Mother agreed that she did not try to communicate with Father about Bishop Dunne before she submitted S.G.'s application, as she believed it would be futile to do so. The parties had already been having difficulty communicating about various other issues, including matters related to the maintenance of S.G.'s hair and Father's refusal to allow S.G. to use the iPad.

Father also testified at the trial. He acknowledged the disagreements over various issues, including the maintenance of S.G.'s hair and the use of the iPad. He acknowledged that he had allowed other individuals, including his brother, to transport S.G. to and from school when he had work obligations. However, he believed that the possession schedule was still workable and in S.G.'s best interest. Father also expressed his opinion that it was in S.G.'s best interest to remain at St. Joseph's, rather than allowing her to transfer to Bishop Dunne, noting that St. Joseph's offered accelerated programs, and that S.G. was thriving at the school, getting good grades, and was participating in a variety of sports. And finally, he testified that if his monthly child support obligation was reduced to $238, he would be willing to pay 50 percent of S.G.'s private school tuition, but that he wanted to have input into what school she attended.

### D. The Trial Court's Order on Modification

Following trial, and after interviewing S.G., the trial court issued its Final Order on

4

Mother's petition to modify, and later entered findings of fact and conclusions of law at Father's request. In its order, the trial court ruled that the parties should remain joint managing conservators, and that Mother would continue to have the exclusive right to designate S.G.'s residence. The trial court, however, modified Father's possession schedule as follows as follows:

1. **Weekend Possession During the School Year:**

   **When the regular work shift ends on a Friday** - Beginning at the time ROBERT GREENE'S regular work shift ends on a Friday, then ROBERT GREENE shall have the right to possession of the child beginning at the time the child's school is regularly dismissed on the Friday on which his shift ends and ending at 6:00 p.m. on the following Saturday.

   **When the regular work shift ends on a Saturday** - Beginning at the time ROBERT GREENE'S regular work shift ends on a Saturday, then ROBERT GREENE shall have the right to possession of the child beginning at 9:00 a.m. on the Saturday on which his shift ends and ending at 6:00 p.m. on the following Sunday.

2. **Weekday Possession During the School Year**:

   **When the regular work shift ends on a Monday, Tuesday or Wednesday -** ROBERT GREENE shall have the right of possession of the child beginning at 5:00 p.m. on the day on which his shift ends and ends at 8:00 p.m. that same day.

The trial court held that Mother had the "exclusive right" to make decisions pertaining to the maintenance of S.G.'s hair, decisions about S.G.'s educational needs, including the selection of her school, and decisions about her selection of extracurricular activities. The trial court further directed Mother to enroll S.G. in Bishop Dunne, as the Mother's school of choice, utilizing Father's membership in the Catholic Church to help defray costs.

The trial court also modified Father's monthly child support obligations, calculating Mother's net monthly resources at $4,362.10, and Father's net monthly resources at $5,534.54. The trial court set Father's monthly child support obligation in accordance with the percentage guidelines at $1,065, but ordered him to pay an additional $300, based on a percentage of S.G.'s

5

private school tuition, for a total monthly obligation of $1,365. And finally, the trial court ordered Father to pay $2,500 in attorney's fees to Mother. This appeal follows.

## II. ISSUES ON APPEAL

Father raises four issues on appeal. First, he argues that the trial court abused its discretion in deviating from the statutory guidelines in setting child support by ordering him to pay part of S.G.'s private school tuition. Second, he claims that the trial court abused its discretion in modifying the possession schedule, arguing that the new schedule unreasonably interferes with his access to S.G. and was not in her best interest. Third, he argues that there was insufficient evidence to support the entry of the additional provisions giving Mother the exclusive right to make decisions regarding S.G.'s hair, her education, and her extracurricular activities. Finally, Father contends that there was insufficient evidence to support the trial court's award of attorney's fees.

## III. MODIFICATION OF FATHER'S CHILD SUPPORT OBLIGATION

In his first issue, Father argues that the trial court abused its discretion in deviating from the statutory guidelines by ordering him to pay an additional $300 a month for S.G.'s private school tuition. He advances two reasons. First, he argues that Mother did not request this deviation, and he contends that he was therefore denied notice that the trial court was considering a deviation. Second, he argues that the trial court abused its discretion in ordering the deviation, contending that Mother presented insufficient evidence to rebut the presumption that the statutory guidelines for setting child support were in the child's best interest or that private school tuition was a "proven need" of the child.

### A. Standard of Review on Child Support Modifications

A court may modify a prior child support order if the circumstances of the child or a person

6

affected by the order have materially and substantially changed since the order was rendered. TEX.FAM.CODE ANN. § 156.401(a)(1)(A), (a)(2). The person seeking a modification of child support has the burden of showing a material and substantial change. *In re J.A.H.*, 311 S.W.3d 536, 541 (Tex.App.--El Paso 2009, no pet.). As in all matters pertaining to the parent-child relationship, the "best interest of the child is always the trial court's primary consideration[.]" *Id.* A trial court retains broad discretion in making the equitable decision of whether to modify a prior support order. *Id.* at 541-542. In determining whether the trial court abused its discretion, we engage in a two-pronged inquiry: "(1) [d]id the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion?" *In re J.A.H.*, 311 S.W.3d at 540; *see also In re T.M.P.*, 417 S.W.3d 557, 562 (Tex.App.--El Paso 2013, no pet.). The operative inquiry in the first question is the sufficiency of the evidence. *In Interest of C.M.V.*, 479 S.W.3d 352, 358 (Tex.App.--El Paso 2015, no pet.).

In determining whether there is legally sufficient evidence to support the trial court's decision, we consider the evidence in the light most favorable to the findings necessary to support the decision, and disregard evidence contrary to the findings unless a reasonable fact finder could not. *In re T.M.P.*, 417 S.W.3d at 562, *citing City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex. 2005). When reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *In re J.A.H.*, 311 S.W.3d at 541. In both instances, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we may not substitute our judgment for that of the trial court. *Id.* When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* Even if evidence is undisputed, it is the province of the trier of fact to draw

7

from the evidence "whatever inferences it wishes so long as more than one inference is possible." *Id.* However, if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.*

Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision, or conversely, whether the ruling was arbitrary and unreasonable. *Id*. at 540. The test for determining whether a trial court abused its discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Id.* at 541, *citing Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985).

## B. Child Support Guidelines

The Texas Family Code provides guidelines for setting a party's child support obligations, which are considered as presumptively in the best interest of the child. TEX.FAM.CODE ANN. § 154.122(a). The Code provides that when, as here, the parties have one child and the obligor's monthly net resources are not greater than $7,500 a month, the trial court shall presumptively base its child support award on 20 percent of the obligor's net resources. *Id.* §§ 154.062; 154.125. However, the presumption is rebuttable, and a trial court has the discretion to "determine that the application of the guidelines would be unjust or inappropriate under the circumstances." *Id*. § 154.122(b). The Code expressly provides that a court may order "periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines." *Id.* § 154.123(a).

The Code sets forth a variety of additional factors a court may consider in determining whether it is in the child's best interest to deviate from the guidelines, including the "age and needs

8

of the child," the ability of the parents to contribute to the support of the child, the amount of time of possession of and access to a child, child care expenses incurred, "special or extraordinary educational . . . or other expenses of the parties or of the child," and "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents." *Id.* § 154.123; *see also Lide v. Lide*, 116 S.W.3d 147, 155-56 (Tex.App.--El Paso 2003, no pet.) (recognizing that a court may order support above or below the guideline amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the children and justifies a variance from the guidelines). If the trial court deviates from the statutory guidelines, Section 154.130 of the Code requires a trial court to make certain findings, including (1) the percentage applied to the obligor's net resources to obtain the child support ordered by the court, (2) the amount child support would be if the percentage guidelines were applied to the obligor's net resources, and (3) the specific reasons that the amount of child support ordered by the court varies from the amount that would result from application of the guidelines. § 154.130(b)(3)-(5).

### C. Analysis

#### 1. Pleading Issues

Father first argues that the trial court erred in deviating from the statutory guidelines, because Mother neither pleaded for, nor requested a deviation. He contends that the trial court lacked the authority to deviate from the guidelines in the absence of any such request, and that he did not receive fair notice that the trial court was considering such a deviation.

In support of his argument, Father relies on the proposition that a judgment is erroneous if not supported by the pleadings. *See* TEX.R.CIV.P. 301. Father is correct that a judgment must generally conform to the pleadings filed in a case. *Id*. However, in cases involving child custody and child support issues, where the "best interest" of the child is the paramount concern, technical

pleading rules do not carry the same weight as they would in a typical civil case. *See, e.g.*, *In Interest of J.H. III*, 538 S.W.3d 121, 125 (Tex.App.--El Paso 2017, no pet.); *In re L.D.F.*, 445 S.W.3d 823, 832 (Tex.App.--El Paso 2014, no pet.); *see also Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) (recognizing that technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children).[2] Once a child is brought under the trial court's jurisdiction by the filing of a suit asking the court to resolve custody and child support issues, it becomes the duty of the court "in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence." *Wood v. Wood*, 510 S.W.2d 399, 402 (Tex.Civ.App.--Fort Worth 1974, no writ); *see also Lohmann v. Lohmann*, 62 S.W.3d 875, 878-79 (Tex.App.--El Paso 2001, no pet.). Therefore, when the parties' pleadings request a modification of a child support or custody order, the parties have "fair notice" of the issues to be decided in the litigation, and the pleadings need not request the "specific modifications" ultimately made by the trial court.[3] *In re Macalik*, 13 S.W.3d 43, 45 (Tex.App.--Texarkana 1999, no pet.), *citing Leithold,* 413 S.W.2d at 701.

Moreover, in the present case, both parties not only requested that the trial court modify Father's child support obligations, but both parties requested that the trial court deviate from the statutory guidelines in making its modifications. In her petition to modify, Mother alleged that S.G.'s tuition would be increasing by $395 in 2018, and she expressly requested that Father be

---

[2] *But see Baltzer v. Medina*, 240 S.W.3d 469, 476 n.5 (Tex.App.--Houston [14th Dist.] 2007, no pet.) (suggesting that TEX.FAM.CODE ANN. § 156.004 supersedes the holding in *Leithold*.

[3] Father relies on *In re A.A.N.*, No. 02-13-00151-CV, 2014 WL 3778215, at *2 (Tex.App.--Fort Worth July 31, 2014, no pet.) (mem. op., not designated for publication), in which the court held that a permanent injunction could not stand in the absence of pleadings expressly requesting the injunction, a request for a trial amendment to raise the issue, or a trial of the issue by consent. Unlike the situation in A.A.H., in which the issue of whether to grant a permanent injunction was not before the court, in the present case, both parties requested a modification of Father's child support obligation, and therefore, the question of whether and how to modify the prior support order was squarely before the court.

ordered to pay 50 percent of the child's school tuition, in addition to his monthly child support obligations. In his pleadings, Father expressly requested a downward deviation from the statutory support guidelines, and at trial, he requested that the court set his monthly support obligation at $238.26, due to the amount of time that S.G. spent with him (however, he indicated that under certain conditions he would be willing to pay 50 percent of S.G.'s private school tuition in addition to that amount). Accordingly, both parties were on notice of the possibility that the trial court could deviate from the statutory support guidelines--either in an upward or downward manner-- and in particular, Father was on notice that the trial court might order him to pay a portion of S.G.'s private school tuition as part of his child support obligation.

## 2. *Deviation from the Guidelines*

Father next argues that even if properly requested, the trial court abused its discretion in deviating from the guidelines by requiring him to pay a portion of S.G.'s private school tuition, arguing there was insufficient evidence to rebut the presumption that following the statutory guidelines was in S.G.'s best interest.[4] Father does not dispute that a trial court has the discretion to order additional child support for payment of a child's private school tuition, but points out that before doing so, the trial court must be presented with evidence that attending a private school, rather than a public school, was a "proven need" of the child. In other words, there must be some evidence demonstrating that there is "something special that makes the particular child need or especially benefit from some aspect of non-public schooling." *In re M.A.M.*, 346 S.W.3d 10, 17-18 (Tex.App.--Dallas 2011, pet. denied) (concluding that the trial court abused its discretion by increasing child support because mother presented no evidence that private school was a proven need of the child); *see also In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 381 (Tex.App.--

---

[4] Father does not raise any arguments regarding whether Mother met her burden of establishing a material and substantial change in circumstances to support a modification, and we therefore do not address that issue.

11

Dallas 2013, no pet.) (absent any evidence of the child's proven needs, the trial court abused its discretion in ordering father to pay private school tuition). Father argues that Mother presented no evidence that there was a need to place S.G. in private school, and that to the contrary, the record demonstrates that S.G. was a well-adjusted child, was getting good grades, and that she would therefore be successful regardless of where she attended school, be it public or private.

As Mother points out, however, throughout the trial court proceedings, Father never raised the possibility that S.G. should attend public school. To the contrary, Father agreed that S.G. should attend a private school, and only questioned which of the two private schools S.G. should attend. In fact, the record demonstrates that the parties had agreed at the start of S.G.'s education that she should attend a private Catholic school, and at trial, Father even offered to pay 50 percent of S.G.'s private school tuition if his monthly child support obligations were otherwise lowered.

Because Father never raised the possibility of having S.G. attend a public school, and since he instead acquiesced in the decision to have S.G. attend a private school, he cannot now be heard to complain for the first time on appeal that the trial court should have considered the possibility of sending her to a public school. TEX.R.APP.P. 33.1(a)(1) (as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion); *see also London v. London*, 94 S.W.3d 139, 143 (Tex.App.--Houston [14th Dist.] 2002, pet. denied) (finding that mother waived issue regarding placing restrictions on children's primary residence, where she failed to raise the issue in the trial court); *Connors v. Connors*, 796 S.W.2d 233, 236 (Tex.App.--Fort Worth 1990, writ denied) (finding that father could not argue on appeal that trial court erred in failing to appoint him as managing conservator where he never requested the appointment in the trial court). We therefore conclude that the trial court did not abuse its discretion in ordering Father to pay a portion of S.G.'s

12

private school tuition as a proven need of the child.

Father's Issue One is overruled.

## IV. MODIFICATION OF THE POSSESSION SCHEDULE

In his second issue, Father contends that the trial court abused its discretion in modifying the parties' possession schedule, contending that the modification unreasonably restricted his access to S.G. and was not in S.G.'s best interest.

### A. Standard of Review

An appellate court reviews a trial court's decision to modify a possession order under the same abuse of discretion standard that we apply to modifications of child support obligations. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex.App.--Fort Worth 2002, pet. denied) (op. on reh'g); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (applying abuse of discretion standard with regard to possession order). The person seeking to modify an existing custody order bears the burden to prove that the circumstances of the child, a conservator, or other party affected by the custody order have materially and substantially changed since the previous custody order, and that a modification would be in the child's best interest. TEX.FAM.CODE ANN. § 156.101; *see also In re T.M.P.*, 417 S.W.3d 557, 563 (Tex.App.--El Paso 2013, no pet.); *Interest of E.M.*, No. 02-18-00351-CV, 2019 WL 2635565, at *5 (Tex.App.--Fort Worth June 27, 2019, no pet.) (mem. op., not designated for publication). There is no bright-line rule for determining what is in a child's best interest; each case must be determined on its unique set of facts. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002).

In determining a child's best interest, a court may use the non-exhaustive list of the so-called *Holley* factors, as set forth in the Supreme Court's opinion in *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976). Those factors include (1) the desires of the child, (2) the emotional and physical

needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child, (7) the stability of the home, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* at 371-72. In the context of custody modification, other factors to be considered include the child's need for stability and the need to prevent constant litigation in child-custody cases. *V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *see also Zeifman v. Michels*, 212 S.W.3d 582, 595 (Tex.App.--Austin 2006, pet. denied).

### B. Analysis

Mother presented testimony at trial to support a finding that a modification was warranted because the expanded possession schedule from the original order had become unworkable. In particular, she testified that Father had denied her the right of first refusal to have possession of S.G. during times when he was unable to take care of her; that Father had allowed various other individuals to take care of S.G. while he was at work; and that S.G. had been tardy to school and had missed some of her extracurricular activities during the Father's possession period. Therefore, we conclude that the Mother met her burden of establishing that a material and substantial change of circumstances had occurred since the time the prior order was entered. *See, e.g.*, *In re K.J.L., III*, No. 11-03-00091-CV, 2004 WL 2137810, at *7 (Tex.App.--Eastland Sept. 23, 2004, no pet.) (mem. op., not designated for publication) (modification of conservatorship order was warranted where evidence demonstrated that child was tardy from or absent from school while in the mother's possession); *In re Macalik*, 13 S.W.3d at 46 (modification of possession schedule was supported by sufficient evidence where evidence demonstrated that father was

unable to take possession of children in a timely manner due to his work schedule).

Father's argument focuses on the question of whether the modification was in S.G.'s best interest. In particular, he contends that the modification was not the least restrictive means to ensure S.G.'s best interest, and that the prior order better accommodated his work schedule, while giving him more access to S.G. than would the modified order. In support of his argument, Father relies primarily on Section 153.193 of the Texas Family Code, which provides that "[t]he terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." TEX.FAM.CODE ANN. § 153.193. As Mother points out, the trial court did not impose any restrictions or limitations on Father's right to possession, such as imposing supervised visitation, and did not deny him access to S.G.

And any "limitations" on the right of possession must also be considered along with Section 153.252 of the Family Code. That section creates a rebuttable presumption that the "standard possession order" set forth in Section 153.312 "provides reasonable minimum possession of a child" for a possessory conservator and is in the "best interest of the child." TEX.FAM.CODE ANN. § 153.252. The standard possession order provides that "the possessory conservator shall have the right to possession of the child as follows: (1) on weekends throughout the year beginning at 6 p.m. on the first, third, and fifth Friday of each month and ending at 6 p.m. on the following Sunday; and (2) on Thursdays of each week during the regular school term beginning at 6 p.m. and ending at 8 p.m., unless the court finds that visitation under this subdivision is not in the best interest of the child." TEX.FAM.CODE ANN. § 153.312. Although the Code provides that a court "shall render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order[,]" it recognizes that there may be

15

instances in which a party's work schedule may make the standard order "unworkable or inappropriate." TEX.FAM.CODE ANN. § 153.253. In determining whether to enter a non-standard possession order, a court may consider the following factors: "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." TEX.FAM.CODE ANN. § 153.256.

In the present case, both parties agreed that the standard possession order set forth in the Family Code was not workable or appropriate in light of Father's work schedule. Therefore, both parties requested that the trial court enter a non-standard possession order but disagreed on how that order should be implemented. As Mother points out, it was then up to the trial court to craft an order that gave Father "reasonable minimum possession" of S.G. and was in S.G.'s best interest in accordance with the Family Code. As set forth above, the trial court's order achieved this goal by giving Father the right to possession of S.G. on various days throughout the week, depending on when his shift ends, and allowing him overnight visits with S.G. when his shift ends on a weekend. The trial court's modified possession order was tailored to accommodate Father's work schedule, but more importantly, to ensure that he would be available to personally take care of S.G. during his periods of possession. Given Mother's testimony that Father was unable to personally take care of S.G. during his periods of possession under the prior possession order, and the problems this caused, the trial court's order struck a balance between giving Father reasonable minimum possession and serving S.G.'s best interest. Accordingly, we conclude that the trial court's modified possession order was supported by substantial evidence, and we therefore find no abuse of discretion.

Father's Issue Two is overruled.

16

## V. ADDITIONAL PROVISIONS

In Issue Three, Father complains that the trial court abused its discretion by ordering additional provisions that gave Mother the exclusive right to make decisions pertaining to the maintenance of S.G.'s hair, her education, and the choice of her extracurricular activities. In particular, Father contends that the evidence failed to demonstrate that these additional provisions were in S.G.'s best interest.

### A. Trial Court has the Discretion to Award One Parent Exclusive Rights

When a trial court appoints both parents as conservators of a child, the court is required to "specify the rights and duties of a parent that are to be exercised: (1) by each parent independently; (2) by the joint agreement of the parents; and (3) exclusively by one parent." TEX.FAM.CODE ANN. § 153.071. The Family Code expressly states that parents can be appointed joint managing conservators "even if the exclusive right to make certain decisions may be awarded to one party." *Id.* § 101.016. The Code does not define how the trial court shall assign or implement the various rights and duties of the conservators, and a trial court therefore retains broad discretion in "crafting the rights and duties of each conservator so as to effectuate the best interest of the child." *See Jenkins v. Jenkins*, 16 S.W.3d 473, 483 (Tex.App.--El Paso 2000, no pet.); *see also In re Z.B.P.*, 109 S.W.3d 772, 779-80 (Tex.App.--Fort Worth 2003, no pet.), *disapproved on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011) (concluding that the record supported trial court's finding that naming the father as the joint managing conservator with the exclusive right to determine children's residence, health care, and education was in the children's best interests).

In general, when the evidence demonstrates that the parties are experiencing difficulty in effectively co-parenting or communicating, or difficulty in reaching shared decisions, a trial court is justified in selecting one parent as an exclusive decision-maker to avoid conflict. *See Coburn*

*v. Moreland*, 433 S.W.3d 809, 828 (Tex.App.--Austin 2014, no pet.) (where parties had ongoing conflicts regarding child's educational needs and activities, court did not abuse its discretion in selecting one parent as exclusive decision-maker to avoid conflicts); *In re M.A.M.*, 346 S.W.3d at, 18-19 (where evidence demonstrated that parents had difficulty co-parenting, and where mother had possession of the child for the vast majority of time, it was in child's best interest to give mother the exclusive right to make decisions regarding child's welfare and educational issues).

### B. Analysis

#### 1. *The Maintenance of S.G.'s Hair*

Father contends that the trial court abused its discretion in giving Mother the exclusive right to make decisions regarding the maintenance of S.G.'s hair, contending that there was insufficient evidence in the record to demonstrate that he was incapable of maintaining the child's hair. The critical issue, however, is not whether Father could successfully maintain S.G.'s hair while she was in his possession, but whether the parties were in conflict over this issue. The trial court heard evidence that the parties were in an ongoing conflict over how to maintain S.G.'s hair, and Mother testified that she had repeatedly advised Father that S.G., who was African-American, needed to use certain hair products to prevent breakages in her hair, but that Father had (1) refused to use the products that she supplied, and (2) had taken S.G. to have her hair cut while she was in his possession after she had asked him not to. Mother also testified at trial that the manner in which S.G.'s hair was maintained was important for her self-esteem, and that the parties' disagreement over the issue of S.G.'s hair was becoming a "problem" for all involved. And at trial, Father expressed an unwillingness to cooperate with Mother on the issue and asserted that he had the right to make unilateral decisions with regard to S.G.'s hair without consulting with Mother when S.G. was in his possession.

18

The evidence sufficiently supports the trial court's decision to award Mother the exclusive right to make decisions regarding S.G.'s hair to avoid future conflicts between the parties. We therefore conclude that the trial court did not abuse its discretion in giving Mother this exclusive right. *See, e.g.*, *In re Cooper*, No. 07-98-0214-CV, 1999 WL 97951, at *6 (Tex.App.--Amarillo Feb. 26, 1999, no pet.) (not designated for publication) (where evidence demonstrated that child's mother took unilateral actions with regard to children's health and education, evidencing her inability to participate with father in making decisions, trial court did not abuse its discretion in giving father the exclusive right to make decisions regarding children's health, education, and welfare).

### 2. *S.G.'s Education*

Father next contends that the trial court abused its discretion by giving Mother the exclusive right to make educational decisions, including the selection of S.G.'s school, and by directing Mother to enroll S.G. in Bishop Dunne Catholic School. In particular, Father argues that there was insufficient evidence to establish that it was in S.G.'s best interest to allow Mother to enroll S.G. in Bishop Dunne, because the evidence established that S.G. was thriving at her current school. We disagree. As set forth above, Mother presented evidence that Bishop Dunne offered better educational opportunities than did S.G.'s current school or other similar private schools in the area, had a more diverse population, and offered more sports and other extracurricular opportunities of interest to S.G.

Further, although the parties were previously in agreement with regard to S.G.'s elementary school, the record demonstrates that the parties could not reach an agreement on where S.G. should attend middle school, and that they were at a stalemate on this issue. We find this evidence to be sufficient to support the trial court's decision to modify the prior order to give Mother the exclusive

right to make educational decisions, and to select S.G.'s school going forward. Accordingly, the trial court did not abuse its discretion in giving Mother this exclusive right. *See In re J.E.P.*, 49 S.W.3d 380, 387 (Tex.App.--Fort Worth 2000, no pet.) (trial court did not abuse its discretion in modifying prior order to grant mother the exclusive right to determine where the children would attend school, whether public or private, where parties prior order had become unworkable).

### 3. S.G.'s Extracurricular Activities

Father next contends that the trial court abused its discretion by giving Mother the exclusive right to make "final decisions," after consulting with him, with regard to choosing S.G.'s extracurricular activities. Father contends that the record is devoid of evidence to support a finding that it was in S.G.'s best interest to give Mother that right. Father posits that at most, there was evidence that S.G. had missed some of her extracurricular activities while she was in his possession but contends that this did not constitute a valid reason for giving Mother final decision-making authority in choosing S.G.'s activities.

While we agree that the record does not contain any evidence that the parties disagreed on this particular issue, the record demonstrated that the parties were experiencing difficulty in co-parenting, in communicating with each other, and in making joint decisions with regard to various other matters related to S.G.'s education and welfare. And the record further demonstrates that S.G. was involved in several extracurricular activities that were obviously important to her. Given the parents' ongoing conflicts, and the importance of extracurricular activities to a child of S.G.'s age, the trial court could have concluded that it was in S.G.'s best interest to allow Mother to make the final decision regarding those activities, after duly consulting with Father, in order to avoid future conflicts between the parties. We therefore conclude that the trial court did not abuse its discretion by giving Mother this exclusive right. *See generally In re R.H.H.*, No. 04-09-00325-

20

CV, 2010 WL 2842905, at *6 (Tex.App.--San Antonio July 21, 2010, no pet.) (mem. op., not designated for publication) (where evidence demonstrated that Father was uncooperative with Mother, and parties had difficulty communicating, trial court did not abuse its discretion in modifying terms of possession by giving Mother the exclusive right to make decisions about child's education and extracurricular activities).

Father's Issue Three is overruled.

## VI. ATTORNEY'S FEES

In his fourth issue, Father contends that the trial court abused its discretion in awarding $2,500 in attorney's fees to Mother.

### A. The Law on Attorney's Fees

The Texas Family Code gives a trial court the discretion to award reasonable attorney's fees and expenses in a case involving the parent-child relationship. TEX.FAM.CODE ANN. § 106.002. In general, the trial court's determination of what constitutes a reasonable and necessary attorney's fee is subject to an abuse of discretion standard on appeal. *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 319 (Tex.App.--El Paso 2010, pet. denied); *In re J.M.C.*, No. 2-09-292-CV, 2010 WL 2889671, at *7 (Tex.App.--Fort Worth July 22, 2010, no pet.) (mem. op., not designated for publication).

However, the Texas Supreme Court recently clarified that a trial court must use the "lodestar method" in determining a reasonable amount of attorney's fees when fees are shifted from one party to another. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019). The lodestar first requires the trial court to determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id.* The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or

lodestar. *Id.* The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.*, *citing El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The Court further noted that general, conclusory testimony devoid of any real substance will not support a fee award, and that instead, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. *Id.* at 501-502. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. Although billing records are not required, they are "strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.*

## B. Analysis

At trial, Mother's attorney admitted a copy of the billing records from his law firm, without objection, and testified under oath that it reflected the work that his firm had performed on Mother's behalf. The billing records detailed the particular services performed, who performed the services, that person's hourly rate, the dates of the services, and the time spent on the services.

Father does not argue that Mother's counsel's billing record was not sufficiently detailed to meet the requirements of *Rohrmoos*. Instead, Father focuses on two separate but related arguments. First, he contends that Mother's attorney did not "personally attest to his qualifications." And second, he contends that the billing record contained the names of two other individuals who billed their time in the case, but that Mother's attorney failed to explain who those individuals were and what qualifications they held. We find both arguments to be without merit.

22

First, we note that in the trial court Father's attorney expressly stipulated to the qualifications of Mother's attorney. Beyond that stipulation, Mother's attorney testified that he is board certified in family law and had over 38 years of experience as an attorney. Mother's attorney also testified that his billing rate of $400 an hour was a reasonable rate in Tarrant County for someone with his experience who was board certified in family law. We therefore reject Father's argument that there was insufficient evidence of the attorney's qualifications. *See, e.g.*, *Farish v. Farish*, 921 S.W.2d 538, 546 (Tex.App.--Beaumont 1996, no writ) (finding stipulation by appellant's counsel as to appellee's counsel's qualifications and reasonableness of hourly fee, together with appellee's submission of itemized statements, was sufficient to support award of attorney fees).

Second, although we agree with Father that Mother's attorney did not attest to the qualifications of the other two individuals who billed their time in Mother's case, this deficiency is not relevant under the particular facts of this case. The billing statement from Mother's law firm totaled $14,198, with $9,720 in attorney's fees attributable to her attorney's work alone, yet the trial court only awarded Mother $2,500 in fees. Therefore, we may assume that the trial court did not rely on the work performed by the other two individuals in calculating its award of attorney's fees. We therefore conclude that the trial court's award of attorney's fees was supported by sufficient evidence, and that the trial court did not abuse its discretion in making this award.

Father's Issue Four is overruled.

## VII. CONCLUSION

We affirm the trial court's judgment, including those amounts awarded for an unsuccessful appeal to an intermediate court of appeals.

JEFF ALLEY, Chief Justice

January 9, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)