COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|   |   |   |
|---|---|---|
| | § | No. 08-11-00350-CV |
| | § | |
| IN THE INTEREST OF T.M.P. | | Appeal from |
| | § | |
| AND J.C.P., CHILDREN | | 233rd District Court |
| | § | |
| | | of Tarrant County, Texas |
| | § | |
| | | (TC # 233-440576-08) |
| | § | |
| | § | |

# **O P I N I O N**

This is an appeal from a trial court's order in a suit affecting the parent-child relationship. The trial court denied Mother's[1] motion to terminate Father's parental rights to the children at issue, granted Father's motion to modify rights of conservatorship, and ordered Mother to pay Father's attorney's fees in the amount of $25,000. The trial court also found that Appellants interfered with the possessory rights of Appellees, and held Mother and the maternal grandparents jointly and severally liable for damages in the amount of $50,000. We affirm in part and reverse and render in part.

---

[1] We identify the parties and witnesses by their familial role to the children both to protect the identity of the children and to clarify the conduct of various relatives. Where necessary, we collectively refer to Mother and her parents as Appellants and Father and his parents as Appellees.

# FACTUAL SUMMARY

On May 30, 2008, Mother filed for divorce in Tarrant County, Texas. An agreed final decree of divorce was signed on August 14, 2009. Mother and Father were named joint managing conservators of their two children, who were three years old and one year old at the time. Mother was awarded the exclusive right to establish the primary residence of the children without regard to geographic location.

By the time the decree was signed, Mother and the children had been living with her parents in South Carolina for approximately three months. The decree set out a specific schedule of Father's possession and access. It also provided that Father's parents were to fly to South Carolina to pick up the children at the beginning of each visitation period and accompany them back to Texas. Likewise, Mother and/or or the maternal grandmother were ordered to fly to Texas at the end of each visitation period and accompany the children back to South Carolina. Father's visitation was to be supervised by chaperones approved by the Tarrant County Community Supervision and Corrections Department and the paternal grandparents had been so approved. [2]

Visitation went as scheduled for the months of August, September and October of 2009. [3] In November, Mother refused to relinquish the children for Father's visitation which was scheduled to run from November 20 until November 26. According to Mother, a few days after returning from the October visit, T.M.P. made an outcry of sexual abuse to her maternal great grandmother who reported it to Mother. Mother and the maternal grandmother both testified that

---

[2] On January 11, 2008, Father pled guilty to aggravated sexual assault of a child and was placed on deferred adjudication community supervision for a period of five years. The record is clear that this charge stemmed from seven incidents of sexual contact between Father and a fifteen-year-old acquaintance at the church where he worked as a janitor. Father's periods of possession to his own children had to be supervised as a condition of his community supervision.

[3] In September 2009, Mother remarried. Mother's new husband and his teenage son lived with Mother and her two children in a converted garage apartment on her parent's property.

they examined the child and noticed unusual redness on her bottom. Both women observed that T.M.P. rubbed her vaginal area "back and forth, not common to what she's ever done before." Based on the redness and the outcry, Mother and the maternal grandmother began calling various authorities in both South Carolina and Texas to report their suspicions that Father had sexually abused the child. As a result, T.M.P. was subjected to multiple physical examinations and forensic interviews, none of which resulted in a finding that any abuse had taken place. Father was required to submit to a polygraph examination in accordance with his conditions of probation, which he passed. Despite the fact that none of these investigations revealed any evidence corroborating their suspicions of sexual abuse, Mother and the maternal grandmother refused to allow the scheduled November visit.

On November 19, the night before the paternal grandparents were to fly to South Carolina to pick up the children, Mother sent an e-mail informing them that she would not be surrendering the children for the November visitation because of recent allegations and suspicions of sexual abuse.

The paternal grandparents flew to South Carolina anyway. When Mother did not meet them at the airport as ordered by the divorce decree, they rented a car and drove to Mother's home. It is undisputed that the children, Mother, and her parents were all inside the house, but no one answered the door. At some point, the maternal grandfather called the sheriff and the paternal grandparents sought law enforcement assistance at the sheriff's office. The sheriff told them that there was nothing he could do, and advised them to return to Texas.

On November 24, Father filed a motion for enforcement. This was the first of many petitions filed by the parties, including: (1) a petition in intervention filed by the paternal grandparents; (2) claims by Father and his parents for tortious interference with possessory

rights; (3) a petition by Mother to terminate visitation between the children, Father, and his parents; (3) a petition by Mother to terminate Father's parental rights,[4] and (4) Father's counter-petition seeking to designate the children's primary residence as Tarrant and contiguous counties.  A bench trial was conducted in June 2011.

The first matter considered was Mother's petition to terminate Father's parental rights.  After Mother and her parents testified, their attorney rested.  Father moved for judgment on the termination issue and the trial court granted it.  The court then addressed Father's motion to modify and suit for tortious interference with his possessory rights. Father and his parents -- who had been permitted to intervene -- all testified.  After hearing the evidence, the trial court entered orders denying Mother's motion to terminate and motion to modify.  Father's motion to modify was granted, with the Mother and Father remaining as joint managing conservators.  Mother was granted the exclusive right to establish the domicile and primary residence of the children, limited to Tarrant County and contiguous counties.  Father was awarded standard visitation which was to be supervised by his parents for as long as he continued on community supervision. Mother was ordered to deliver the children to the paternal grandparents until such time as Mother relocated to Texas.  The court found that Mother and the maternal grandparents had violated Section 42 of the Texas Family Code, had intentionally and knowingly interfered with Father's and the paternal grandparents' possessory rights, and held them jointly and severally liable for damages in the amount of $50,000.  Mother was also ordered to pay Father's attorney's fees in the sum of $25,000.  Mother and her parents appeal and we proceed without the benefit of findings of fact and conclusions of law.

---

[4]  Mother alleged as the basis for termination that Father (1) was not allowed access or possession of the children due to the terms of his probation violation; and (2) had failed to support the children as ordered by the court.  Mother admitted at trial that all child support was current and that the State had withdrawn its motion to revoke probation.

## MODIFICATION OF RESIDENCE RESTRICTIONS

In Issues One and Two, Mother claims the trial court erred in restricting the children's primary residence to Tarrant and contiguous counties because: (1) Father failed to establish a material and substantial change in circumstances; and (2) he failed to show that the modification was in the children's best interest.

### *Standard of Review*

A trial court may modify a conservatorship order if the petitioner proves by a preponderance of the evidence that: (1) the modification would be in the best interest of the child; and (2) the circumstances of the child, a conservator, or other person affected by the order have materially and substantially changed since the date of the rendition of the prior order. TEX.FAM.CODE ANN. § 156.101(West Supp. 2012). The best interests of the children must always be a court's primary consideration when determining issues of conservatorship. TEX.FAM.CODE ANN. § 153.002(West 2008). In the context of residency restrictions, the primary goals are to:

> (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>
> (2) provide a safe, stable, and nonviolent environment for the child; and
>
> (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX.FAM.CODE ANN. § 153.001(a)(West 2008); *see Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002); *In re D.M.D.*, No. 05-07-01045-CV, 2009 WL 280465, at *3-4 (Tex.App.--Dallas Feb. 6, 2009, no pet.)(mem. op.); *Bates v. Tesar*, 81 S.W.3d 411, 430 (Tex.App.--El Paso 2002, no pet.).

We review a trial court's decision to modify a conservatorship order for a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.A.M.*, 346 S.W.3d

10, 13 (Tex.App.--Dallas 2011, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding principles, or when it fails to correctly analyze the law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex.App.--Dallas 2011 no pet.). In family law cases, the abuse of discretion standard of review overlaps with traditional sufficiency standards of review. *In re W.C.B.*, 337 S.W.3d at 513, *citing In re A.B.P.*, 291 S.W.3d 91, 95 (Tex.App.--Dallas 2009, no pet.). As a result, legal and factual sufficiency are not independent grounds of error in modification cases, but instead are relevant factors in assessing whether the trial court abused its discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex.App.--Ft. Worth 2002, pet. denied). To determine whether the trial court has abused its discretion, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *See In re C.A.M.M.*, 243 S.W.3d 211, 220 (Tex.App.--Houston [14th Dist.] 2007, pet. denied), *citing Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex.App.--Austin 2006, pet. denied); *Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex.App.--Dallas 2007, no pet.); *Echols v. Olivarez*, 85 S.W.3d 475, 477-78 (Tex.App.--Austin 2002, no pet.); *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex.App.--El Paso 1998, no pet.). The operative inquiry in the first question is the sufficiency of the evidence. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex.App.--Dallas 2009, no pet.). We must then decide whether, based on the elicited evidence, the trial court made a reasonable decision. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex.App.--Dallas 2005, pet. denied).

Where, as here, the trial court does not file findings of fact and conclusions of law, we imply all necessary findings of fact to support the trial court's order. *BMC Software Belgium,*

*N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re W.C.B.*, 337 S.W.3d at 513, *citing Waltenburg v. Waltenburg*, 270 S.W .3d 308, 312 (Tex.App.--Dallas 2008, not pet.). When the appellate record includes a reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency. *In re W.C.B.*, 337 S.W.3d at 513; *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex.App.--Austin 2006, pet. denied), *citing Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex.App.--Houston [14th Dist.] 1999, pet. denied).

In determining whether there is legally sufficient evidence, we consider the evidence in the light most favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex.App.--Dallas 2009 pet. denied). When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See City of Keller*, 168 S.W.3d at 822; *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)(per curiam). When the evidence is conflicting, we must presume that the fact-finder resolved the inconsistency in favor of the order if a reasonable person could do so. *See City of Keller*, 168 S.W.3d. at 821. The trial court does not abuse its discretion if evidence of a substantive and probative character exists to support its decision. *In re J.C.*, 346 S.W.3d 189, 193 (Tex.App.--Houston [14th Dist.] 2011, no pet.), *citing In re C.A.M.M.*, 243 S.W.3d at 214; *Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex.App.--Houston [1st Dist.] 1996, no writ). The trial court is in the best position to observe the witnesses and their demeanor, and we give the court great latitude when determining the best interest of a child. *In re W.C.B.*, 337 S.W.3d at 513, *citing In re S.E.K.*, 294 S.W.3d at 930. Accordingly, the mere fact that the appellate court

might decide the issue differently than the trial court does not establish an abuse of discretion. *Downer*, 701 S.W.2d at 242; *Zeifman*, 212 S.W.3d at 587.

### *Material and Substantial Change in Circumstances*

In a modification suit, the threshold inquiry is whether the moving party has met the burden of demonstrating a material and substantial change. *Bates v. Tesar*, 81 S.W.3d 411, 427 (Tex.App.--El Paso 2002, no pet.). In considering whether a change of circumstances has occurred, the trial court compares the evidence of the conditions that existed at the time of the entry of the prior order with the evidence of the conditions that existed at the time of the hearing on the petition to modify. *In re W.C.B.*, 337 S.W.3d at 514, *citing In re A.B.P.*, 291 S.W.3d 91, 95 (Tex.App.--Dallas 2009, no pet.) *and In re C.C.J.*, 244 S.W.3d 911, 919 (Tex.App.--Dallas 2008, no pet.). Whether a change in residency is a material and substantial change of circumstances depends on the facts of the case. *See Lenz*, 79 S.W.3d at 17-18; *In re D.M.D.*, 2009 WL 280465, at *3-4; *see also*, 212 S.W.3d at 593 In other words, a fact finder is not confined to rigid or definite guidelines; instead, the determination is fact specific and must be made according to the circumstances as they arise. *In re A.L.E.*, 279 S.W.3d at 428. Material changes may include (1) the marriage of one of the parties, (2) poisoning of a child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of a child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody. *Id.* at 429. Such change in circumstances may be established by either direct or circumstantial evidence. *In re A.L.E.*, 279 S.W.3d at 429.

Mother contends that a "mere allegation of sexual misconduct between [Father] and T.M.P." does not rise to the level of a material and substantial change in circumstances. But the record is not so limited and the trial court heard much more. There was extensive testimony

demonstrating that Mother and the maternal grandmother continued to call authorities and subjected T.M.P. to repeated physical examinations and interviews, even after they had been told by multiple professionals that the accusations of sexual abuse were not credible. The Southlake, Texas, police department decided not to bring criminal charges, as did the Dallas County District Attorney's Office. There were persistent efforts to have Father's probation revoked. At one point, the State of Texas did file a petition to revoke but it was subsequently withdrawn and no revocation ever occurred. The trial court heard testimony that one of Mother's motives was to have Father arrested and his probation revoked so she could obtain either sole managing conservatorship or termination of Father's parental rights. There was also testimony concerning attempts by Mother and her parents to engage in parental alienation. Father agreed with the finding of the social study that the maternal grandmother had "spearheaded this crusade." He and his parents expressed concern that for as long as the children lived in South Carolina, there would be continued efforts by Appellants to interfere with visitation or pursue other criminal complaints. Appellants believed Mother's husband should adopt these two little children. He has been married twice previously, has custody of his teenage son but no relationship with his ten-year-old daughter in Michigan. He also has "a little something" of a legal problem with previous incidents of domestic violence. In the end, Mother testified that Father was not a bad parent; she even acknowledged that she would allow him to have supervised visitation with the children following termination provided he traveled to South Carolina and paid for his transportation.

The trial judge was free to judge the credibility of the witnesses. Based on the evidence, the trial court could have reasonably found that Appellants actively engaged in a course of conduct designed to prevent the children from favorably associating with Appellees. Because a

reasonable and fair minded jurist could have found a material and substantial change in circumstances sufficient to warrant modification of the prior order, we overrule Issue One.

### *The Best Interests of the Children*

The next question is whether the trial court's decision to restrict Mother's right to designate the children's primary residence was in their best interests. By her second issue, Mother claims that the trial court abused its discretion by requiring the children to return to Texas.

In reviewing issues of best interest, Texas appellate courts look to the non-exhaustive list of factors articulated in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The "*Holley*" factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72; *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex.App.--Fort Worth 2002, no pet.). When the trial court's decision involves relocation issues, the Texas Supreme Court has identified the following additional factors: (1) the relationship with and presence of extended family; (2) the presence of friends; (3) the presence of a stable and supportive environment; (4) the custodial parent's improved financial situation and ability to provide a better standard of living for the child; (5) the positive impact on the custodial parent's emotional and mental state, with beneficial results to the child; (6) the noncustodial parent's right to have regular and

meaningful contact; (7) the ability of the noncustodial parent to relocate; and (8) the ability of the noncustodial parent to adapt his work schedule to the child. *Lenz. v. Lenz*, 79 S.W.3d 10, 15-18 (Tex. 2002). Other factors the courts may also consider include the child's stability and the need to prevent constant litigation in child custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

First, we look to the effect the residency restriction would have upon the children's extended family relationships and their ability to bond and communicate with their father. Mother worked as a hairdresser in South Carolina and lived rent free with her children, her new husband and her step-son in a converted garage apartment on her parent's property. Her brother, the maternal grandparents, and the maternal great grandmother all lived in different homes on the same property, which the grandfather described as a 23-acre "compound." Mother argues that the children are thriving in South Carolina and that there was no clear indication that she or her husband would be able to locate suitable employment or housing in Texas. While Mother recognizes that moving to Texas may improve the children's relationships with their father and paternal grandparents, she contends this would come at the expense of the children's relationships with their maternal grandparents to whom they have become attached. It is certainly true that while living in South Carolina, the children had frequent contact with Mother's extended family, and that such contact would inevitably be diminished by relocating to Texas. On the other hand, moving the children to Texas would improve the children's relationship with the Father and his extended family. And while Mother did not know whether she could find employment in Texas, Father was unable to relocate to South Carolina due to the terms of his probation.

In conducting our review, we must concentrate on the general quality of life of the children and assess whether the proposed change would be positive and in the children's best interest. Here, the trial court heard evidence that within three months of the divorce, Mother had remarried, engaged in efforts to rid herself of the children's father and to pave the way for a step-parent adoption. In the process, she subjected T.M.P. to numerous interviews, doctor's visits and therapists. Despite the fact that every investigation ruled out the allegations of sexual abuse, Mother and the maternal grandmother repeatedly called authorities in South Carolina and Texas asking questions about the terms of Father's probation and reporting their suspicions of sexual abuse. The trial court believed the testimony of Father and his parents that this course of conduct was not only harmful to T.M.P. but designed to alienate the children from their Father and his side of the family. In fact, at the conclusion of the hearing, the trial judge specifically announced his finding "that the actions of [Mother] and [maternal grandmother] have been detrimental to the best interest of the children subject of this suit."

The trial court was in the best position to observe the demeanor and personalities of the witnesses and could feel the forces, powers, and influences that cannot be discerned by merely reading the record. *Bates v. Tesar*, 81 S.W.3d 420, 424 (Tex.App.--El Paso 2002, no pet.). Thus, trial courts do not abuse their discretion so long as some evidence of a substantive and probative character exists to support the trial court's decision. *Jenkins v. Jenkins*, 16 S.W.3d 473, 477 (Tex.App.--El Paso 2000, no pet.). We conclude that the evidence is legally and factually sufficient to support the trial court's determination that restricting Mother's ability to designate the children's primary residence was in the best interest of the children. Issue Two is overruled.

**INTERFERENCE WITH POSSESSORY RIGHTS**

The remaining issues on appeal attack the trial court's judgment with respect to Appellees' claims for interference with possessory rights. The trial court found that Mother and her parents "intentionally and knowingly interfered with the ***possessory rights*** of [Father] and the ***supervisory rights*** of [paternal grandparents]." [Emphasis added]. Appellees were awarded damages of $50,000 for tortious interference.

### *Subject Matter Jurisdiction - Standing of Paternal Grandparents*

In Mother's Issue Three and Maternal Grandparents' Issue One, the Appellants present identical issues challenging the trial court's subject matter jurisdiction. Specifically, they contend that the paternal grandparents had no possessory rights and therefore lacked standing to file suit under Chapter 42 of the Texas Family Code.

### *Standard of Review*

Standing is a threshold issue. *In re Y.B.*, 300 S.W.3d 1, 4 (Tex.App.--San Antonio 2009, pet. denied), *citing In re S.S.J.-J.*, 153 S.W.3d 132, 134 (Tex.App.--San Antonio 2004, no pet.). It is not merely a statutory bar, but is a component of subject-matter jurisdiction. *In re H.G.*, 267 S.W.3d 120, 124 (Tex.App.--San Antonio 2008, pet. denied), *citing Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). If a party lacks standing, the trial court is deprived of subject-matter jurisdiction. *H.G.*, 267 S.W.3d at 124. Any action a court takes without subject matter jurisdiction is void. *H.G.*, 267 S.W.3d at 124, *citing Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990).

### *Did the Paternal Grandparents Have Possessory Rights?*

Chapter 42 of the Texas Family Code establishes a statutory cause of action for damages against: (1) a person who takes or retains possession of a child in violation of a possessory right

of another person; and (2) a person who aids or assists the person in such conduct. TEX.FAM.CODE ANN. §§ 42.002, 42.003, 42.006 (West 2008). "Possessory right" is defined in Section 42.001 as "a court-ordered right of possession of or access to a child, including conservatorship, custody, and visitation." TEX.FAM.CODE ANN. § 42.001(b)(West 2008).

It is abundantly clear from the final decree of divorce that the paternal grandparents never had a court-ordered right to access or possession. In fact, it specified to the contrary:

> THIS VISITATION ORDER IS NOT TO BE CONSTRUED AS GRANTING GRANDPARENT'S VISITATION RIGHTS OR ANY TYPE OF CONSERVATIVE RIGHTS.

The role of the paternal grandparents was merely to supervise Father's visits with the children and facilitate transportation between Texas and South Carolina. They do not acknowledge this limitation in the order and focus instead on the fact that since "access" is not defined within the applicable Family Code provisions, we must look elsewhere for definitions. They direct us to two dictionary definitions: (1) the right or opportunity to approach or see someone; and (2) permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing. From this, they infer that as chaperones, they were granted "access." We conclude that while they were certainly facilitators of Father's possessory rights, they were granted no independent rights. Because they lack standing to bring a suit for tortious interference, they are not entitled to recover damages. We thus sustain Mother's Issue Three and Maternal Grandparents' Issue One. We reverse the damage award in favor of the paternal grandparents and render judgment that they take nothing.

### *Damages Awarded for Interference with Possessory Rights*

Finally, in Mother's Issue Four and Maternal Grandparents' Issue Two, Appellants argue that the trial court erred in awarding damages of $50,000 for interference with possessory rights.

Because we have decided that the paternal grandparents lacked standing, they cannot recover damages. We thus sustain Maternal Grandparents' Issue Two. We turn now to the damages awarded to Father.

Appellants admitted their conduct at trial and do not appeal the issue of liability. The question remaining is whether sufficient evidence supports a $50,000 award to Father based on his tortious interference claim. This question is further complicated by the fact that Father was also awarded $25,000 in attorney's fees, costs and expenses in defending against Mother's suit. Appellants have not challenged the fee award, but attorney's fees are a consideration in the damage award.

The Texas Family Code provides for damages in a tortious interference case:

(a) Damages may include:

　　(1) the actual costs and expenses incurred, including attorney's fees, in:

　　　　(A) locating a child who is the subject of the order;

　　　　(B) recovering possession of the child if the petitioner is entitled to possession; and

　　　　(C) enforcing the order and prosecuting the suit; and

　　(2) mental suffering and anguish incurred by the plaintiff because of a violation of the order.

(b) A person liable for damages who acted with malice or with an intent to cause harm to the plaintiff may be liable for exemplary damages.

TEX.FAM.CODE ANN. § 42.006 (West 2008).

Appellants complain that there was insufficient evidence to demonstrate they acted with malice or intent to harm, which is a requirement for an award of exemplary damages. The trial court made a finding of bad faith, but not a finding of actual malice. It also found that Appellants knowingly and intentionally interfered with Father's possessory rights, but made no

finding concerning an intent to cause harm, though one could certainly be inferred from the testimony. Appellants also correctly note that there was no evidence of Father's mental anguish or evidence relating to the cost of locating and recovering the children such as the employment of attorneys in South Carolina or private investigators.[5] Finally, Appellants contend that if the $50,000 was based on actual costs, expenses, and attorney's fees incurred by Father, the trial court still abused its discretion because the fees related to the tortious interference claims were not properly segregated from fees related to the other conservatorship issues. In *passim*, they allege that if the $50,000 damage award relates only to attorney's fees, double dipping has occurred since Father additionally recovered $25,000 in fees. We address these two specific complaints. By letter dated June 15, 2011, the trial court notified the parties as follows:

> 5. [Father] is awarded attorney's fees in the amount of $25,000 over and against [Mother] for the defense of the allegations contained in the First Amended Original Petition to Terminate the Parent-Child Relationship and the Petition to Modify Parent-Child Relationship and the protection of his parental rights. The court finds that such fees were necessary for the protection of the children subject of this proceeding.

> 6. The court finds that [Appellants] have intentionally and knowingly interfered with the possessory rights of [Appellees]. As a result of this interference with their possessory rights, [Appellees] have suffered damages in the amount of $50,000. As such, [Appellees] are awarded judgment over and against [Appellants], jointly and severally, in the amount of $50,000.

The order entered tracks this ruling. We can thus glean that the $25,000 fee award related to Mother's initial attempt to eliminate all visitation and her subsequent attempt to terminate Father's parental rights. The $50,000 damage award was predicated on tortious interference with Father's possessory rights. Appellants' actions necessitated litigation in Texas on the issue of restricting the children's residence to Tarrant County and contiguous counties.

---

[5] Father did not employ a private investigator but Mother did. The record describes a video of Father's sister's boyfriend walking with the children. This video was provided by Mother to the Dallas County District Attorney's Office to demonstrate that Father was with the children without the supervision of his parents. This much she admits, but she claims that prosecutors were told upfront that the man in the video was not Father. Father claimed that the correct identity of the man was not provided until long after the fact.

- 16 -

Father prevailed on this request. We also know from the record that the paternal grandparents had independent counsel, meaning that Father's attorney's fees did not include any time expended in their representation. We also know that Father's attorney in this litigation did not handle any of the criminal defense work necessary to defend against Mother's sexual abuse allegations.

What was the evidence on attorney's fees? First and foremost, by Rule 11 agreement, the parties stipulated as to the amount of Father's attorney's fees. Counsel's case ledger was admitted into evidence, showing total fees and expenses of $134,034.82. Neither Mother nor the maternal grandparents objected to opposing counsel's billings nor admission of the exhibit. Stipulations of fact are binding on the parties. *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex.App.--Dallas 2007, pet. denied).

There was no request that the trial court order counsel to segregate the fees, no objection that the fees had not been segregated, and no complaint in the motion for new trial. But Texas jurisprudence has required segregation in accordance with "the American Rule":

> For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract. This rule is so venerable and ubiquitous in American courts it is known as "the American Rule." Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees. As a result, fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not.

*Tony Gullo Motors v. Chapa,* 212 S.W.3d 299, 310-311 (Tex. 2006). Segregation was not required here because Father was entitled to attorney's fees in the suit affecting parent-child relationship[6] and the suit for tortious interference with possessory rights[7]. Because the statutory damage award of $50,000 may include attorney's fees, the evidence supports an award of

---

[6] TEX.FAM.CODE § 106.002(a)(West 2008).

[7] TEX.FAM.CODE § 42.006(a)(1)(West 2008).

$75,000 (the $50,000 damage award and the $25,000 fee award) because the total fees incurred were far more than the sums awarded. We overrule Mother's Issue Four and Maternal Grandparents' Issue Two.

We reverse and render the money judgment in favor of the paternal grandparents and affirm the remainder of the trial court's order.

August 28, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.