**Opinion issued September 29, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00481-CV

————————————

## IN RE A.T.E., A CHILD

———

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-10540**

———

## MEMORANDUM OPINION

This is a custody dispute. Lee Erickson and Samantha Erickson have one child, A.T.E., who we will refer to as Anna.[1] When Lee and Samantha[2] divorced in 2012, Samantha was named sole managing conservator, and Lee was named

---

[1]   We refer to the child by a pseudonym to protect her privacy.

[2]   We will refer to the parents by their first names because they share the same last name.

possessory conservator and granted only supervised visits with Anna. In 2016, Lee petitioned to modify the custody order to allow unsupervised visits. Samantha resisted the modification, arguing that Lee failed to establish, as a threshold matter, a material and substantial change in circumstances to warrant a modification and, even if he had, Lee failed to meet his burden to obtain unsupervised visitation with Anna. The trial court held an evidentiary hearing and granted the modification.

In five issues, Samantha contends the trial court abused its discretion in granting the modification. Because we conclude Lee failed to meet his burden to establish a material and substantial change in circumstances, we hold that the trial court abused its discretion in granting a modification of the custody order and reverse the trial court's judgment.

**Background**

Lee received a DWI in 2012 while driving a company vehicle. Describing the DWI as the latest in a string of events evincing Lee's on-going issues with alcohol, Samantha filed a Suit Affecting Parent Child Relationship (SAPCR) that sought to limit Lee's access to Anna. Samantha attached her own multi-page affidavit to her petition in which she recounted numerous events during their marriage when Lee became intoxicated and required law enforcement or family assistance to rectify the situation. Examples included turning on the stovetop burner with an empty pot above the open flame and then, because of his intoxication, walking away with the fire still

2

burning; passing out in public and having the police call Samantha in the middle of the night to come pick him up from the jail while Samantha was caring for a two-year-old child alone at home; passing out repeatedly in the family home and vehicle; urinating in inappropriate locations in the family home because his intoxication prevented him from finding the bathroom; and mixing alcohol with prescription and illegal drugs. Samantha requested that she be named sole managing conservator, that Lee be granted only supervised visits with Anna, and that Lee be prohibited from drinking during the 12 hours preceding periods of supervised visitation and during supervised visitation.

Having returned to his home country of Canada after losing his job and work visa, Lee did not contest the suit. A default judgment was entered. Samantha was named sole managing conservator, Lee was named possessory conservator, and Lee was limited to supervised visits. Shortly thereafter, Lee and Samantha divorced.

Unlike with the SAPCR, both parties participated in the divorce litigation. It concluded with an Agreed Final Decree of Divorce. The agreed divorce decree incorporated the terms of the earlier SAPCR order and attached that order as an exhibit. Under the terms of the divorce decree, Lee agreed to be limited to supervised visitation and to be prohibited from consuming alcohol before or during his visits with Anna. The decree specified that visitation would be supervised by Samantha "or any responsible adult designated by" Samantha. As with any other custody order,

the agreed final decree of divorce is res judicata as to Anna's best interests at the time of its entry. *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969).

Over the next three years, Lee traveled to Texas to visit Anna under Samantha's supervision. At times, Lee requested that his mother or someone else be permitted to supervise instead, but Samantha always refused. Eventually, Samantha began a new relationship. At times, that person and his children would come with Samantha and Anna to the supervised visits.

In 2016, Lee filed a petition to modify the custody order. The modifications he sought were to be named joint managing conservator, to have unsupervised visits with Anna, and to be permitted to consume alcohol before and during the visits. After numerous procedural events, including an unauthorized attempt at an interlocutory appeal, the matter was set for an evidentiary hearing in May 2019.

There were three witnesses: Lee, Samantha, and Lee's new wife, Elizabeth. Both sides submitted extensive documentary evidence, including photographs, screenshots of Facebook posts, screenshots of text messages, and child support documents. Samantha argued that Lee's Facebook posts—many of which centered on a theme of alcohol—showed that alcohol continued to play a central role in Lee's life and his alcohol use had not diminished. Lee argued he did not have an issue with alcohol and the restrictions were unnecessary. During the proceeding, the trial court ordered Lee to submit to a drug and alcohol test: the test results were negative.

Following the hearing, the trial court entered a modified custody order that permitted Lee unsupervised visits with Anna with a detailed and specific step-up progression that would eventually permit international travel. The order maintained the prohibition against alcohol consumption before and during the visits.

Samantha appealed. We referred the parties to mediation, but Lee objected. After Lee's objection, we notified the parties that the case would be resolved on the briefs.[3]

### Substantial and Material Change: Threshold Issue

In her third and fourth issues, Samantha contends the trial court abused its discretion in modifying the custody order because there was factually and legally insufficient evidence of a substantial and material change in circumstances to warrant disturbing the existing custody order.

### A.    Applicable law

A final judgment resolving custody issues, like Lee and Samantha's agreed final divorce decree, is res judicata on the issue of what is in the child's best interests at the time the judgment was entered. *Knowles*, 437 S.W.2d at 817. Texas has a long-standing public policy against repeated re-litigation of custody issues. *See id.*; *Smith v. Karanja*, 546 S.W.3d 734, 738 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

---

[3]    Samantha filed post-submission materials that were not in the record. We did not consider these materials.

The rationale for the policy is that custody modifications disrupt the stability of the home and the surroundings of the child subject to the custody order. *See Knowles*, 437 S.W.2d at 817; *Smith*, 546 S.W.3d at 738.

Consistent with this policy, parents who want to alter the terms of an existing custody order are required, as a threshold matter, to demonstrate that a substantial and material change in circumstances has occurred. *See Knowles*, 437 S.W.2d at 817; *Smith*, 546 S.W.3d at 738. Absent that threshold showing, the existing custody arrangement will not be disturbed. *See Knowles*, 437 S.W.2d at 817; *Smith*, 546 S.W.3d at 738. Specifically, Section 156.101 of the Family Code provides that a "court may modify an order that . . . provides for the possession of or access to a child if modification would be in the best interest of the child and . . . [among other possibilities not at issue in this case] the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order." TEX. FAM. CODE § 156.101(a)(1).

In this modification, then, "the threshold inquiry is whether the moving party has met the burden of demonstrating a material and substantial change." *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.—El Paso 2013, no pet.). To prove that a material and substantial change in circumstances has occurred, "the evidence must show the conditions that existed at the time of the prior order as compared to the conditions that existed at the time of the hearing on the motion to modify." *In re*

6

*K.D.B.*, No. 01-18-00840-CV, 2019 WL 4065276, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, no pet.) (mem. op.). Without evidence of both the historical and the current relevant circumstances, "the court has nothing to compare and cannot determine whether a change has occurred." *Ziefman v. Michels*, 212 S.W. 3d 582, 594 n.1 (Tex. App.—Austin 2006, pet. denied). Once provided evidence of both sets of circumstances, the trial court must compare the two to determine whether a substantial and material change has occurred. *In re W.C.B.*, 337 S.W.3d 510, 514 (Tex. App.—Dallas 2011, no pet.); *see Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.). This comparison "is fact specific and must be made according to the circumstances as they arise." *Arredondo v. Betancourt*, 383 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

There are no firm guidelines about what should qualify as a substantial and material change, but the courts generally have accepted the following changes: (1) remarriage by a party, (2) poisoning of the child's mind by a party, (3) change in home surroundings, (4) mistreatment of the child by a parent or step-parent, and (5) a parent's becoming an improper person to exercise custody. *Smith*, 546 S.W.3d at 741.

Examples of changed circumstances that have been found to not meet the threshold of a material or substantial change include (1) a temporary loss of contact with the child, (2) a parent's decreased participation in raising the child, (3) a

7

parent's desire, but inability, to have the child travel internationally, and (4) a parent's desire to spend more time with the child. *See id.* at 741–42; *In re C.H.C.*, 392 S.W.3d 347, 351-52 (Tex. App.—Dallas 2013, no pet.) (mere desire to spend more time with child insufficient); *Zeifman*, 212 S.W.3d at 593–94 (listing additional examples).

This Court has held that the substantial and material change that is relied on as the basis for modification must be material to the modification sought. *Smith*, 546 S.W.3d at 741–42. Identifying a change in one circumstance to seek a modification of another aspect of the custody arrangement improperly avoids the Legislature's requirement that a substantial and material change be established to open the custody terms to modification. *Id.* The requested modification must be "somehow connected to the changed circumstances" to permit re-examination of the custody terms. *Id.* (stating, by example, that "a remarriage may require some changes but does not mean that the trial court may now modify other provisions in the original divorce decree unrelated to the remarriage").

## B.      Standard of review

We review a modification order under an abuse of discretion standard, including the threshold matter of whether the petitioner has demonstrated that a substantial and material change has occurred. *Id.* The test is whether the trial court acted without reference to any guiding rules or principles and, thus, acted arbitrarily

or unreasonably. *Id.* Under this standard, legal and factual insufficiency are not separate, independent grounds for asserting error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 737–38. The appellate court "must determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of discretion." *In re K.D.B.*, 2019 WL 4065276, at *6.

## C. Lee failed to meet his burden to establish a substantial and material change connected to supervision

The modifications Lee sought were to have unsupervised visits with Anna, including the ability to travel internationally with her, and to remove the restriction against consuming alcohol before and during the visits. When asked to identify what had substantially and materially changed since 2012, Lee testified that both he and Samantha had gotten married, Anna was older, and his job allows him extended time to be in Houston.

This Court has held that the substantial and material change that is relied on as the basis for modification must be material to the modification sought. *Smith*, 546 S.W.3d at 741–42. In *Smith,* the mother sought a modification of a custody order to allow her to travel internationally with her child. *Id.* at 735. The father fought the modification. *Id.* The trial court granted the modification, and the father appealed, arguing that the mother had failed to establish a substantial and material change in circumstances to permit a modification. *Id.* at 737–38. We reversed, concluding that

9

the mother had not established a substantial and material change. *Id.* at 741–42. We did so by analyzing, first, whether the custody term that the petitioning parent was seeking to modify was an issue at the time of the divorce, meaning the issue had not changed. *Id.* at 741. We noted evidence that the child had traveled internationally before the divorce and that the parties had litigated in the divorce whether the mother would be allowed to travel internationally with the child. *Id.* From this evidence, we determined that the mother was raising an issue that existed at the time the divorce decree was entered. The possibility of and desire to travel had not changed and, therefore, could not qualify as a substantial and material change in circumstances to open the custody terms to modification. *Id.* at 741–42.

We then analyzed whether the circumstances had changed related to the issue of international travel. The mother presented evidence of a foreign family member's recent death and her urgent desire to have the child attend the funeral in the other country. *Id.* We held that, to the extent the family member's death may have presented a substantial and material change, the modification entered by the trial court was not appropriately limited to the change identified. *Id.*

There is a "statutory requirement that a modification order be based upon a material and substantial change in circumstances . . . [T]he relief the trial court may grant must be somehow connected to the changed circumstance[s]." *Id.* at 741. Yet, the trial court's modification allowed international travel beyond what would be

required for this particular funeral. *Id.* Having concluded that the trial court abused its discretion in granting a modification to broadly allow international travel, this Court reversed the modification order and rendered judgment in favor of the father, vacating the order. *Id.* at 742.

In another case, *In re. A.B.R.*, a father sought to modify custody, claiming that he had moved, he wanted more time with his kids, he and his ex-wife could not agree on the selection of activities for the kids, and the kids' sports were negatively impacting his visitations. 2018 WL 3998684, at *5–6. The father sought to modify the custody provisions in numerous ways, including changes to the children's psychological and psychiatric treatment, changes to the management of the children's passports, a new requirement that the mother submit to a psychological evaluation, a new "right of first refusal" for the father when the mother became unavailable during her periods of possession, and a new limitation on the mother's ability to enroll the kids in activities that might interfere with the father's visitation periods. *Id.* at *2. The trial court granted modifications. *Id.*

The appellate court reversed the trial court's modification order, concluding that the father had not met his threshold burden to establish a substantial and material change in circumstances. *Id.* at *8. While the father had moved, that move was anticipated at the time of divorce. *Id.* at *5. The parents' disagreements about their children's activities provided no evidence of a substantial and material change in

circumstances. *Id.* at \*6. Nor did the father's desire to spend more time with his children. *Id.* International travel had been contemplated at the time of the divorce. *Id.* And the father had agreed in the divorce decree to prioritize the kids' sports obligations during his periods of possession. *Id.* Moreover, a change noted by the children's therapist—communication difficulties and being "mistrusting"—was not shown to be material to the parent-child relationship or "to justify the disturbing influence of relitigating child-custody issues." *Id.* at \*8.

The main feature of the 2012 order that Lee challenged is the requirement that his visits with Anna be supervised, which was ordered after the trial court received evidence indicating that Lee had an issue with alcohol that led to documented behaviors and incidents. To modify that feature of the custody order, Lee was required to establish that the changes he identified are somehow connected to his requested modification to allow unsupervised visits on a standard-possession-order schedule with international travel. *Smith*, 547 S.W.3d at 742; *see In re A.B.R.*, No. 04-17-00220-CV, 2018 WL 3998684, at \*7 (Tex. App.—San Antonio Aug. 22, 2018, no pet.) (mem. op.) (citing *Smith* and stating that "the changed circumstances must be material to some aspect of the parent–child relationship that justifies changing an order affecting the parent–child relationship"); *Wiese v. Albakry*, No. 03-14-00799-CV, 2016 WL 3136874, at \*6 (Tex. App.—Austin June 1, 2016, no

pet.) (mem. op.) (refusing to consider a change in circumstances because it was not material to the custody terms the petitioner sought to modify). Lee did not.

Generally, a child's aging is a contemplated event that will not constitute a substantial and material change. *See Wiese*, 2016 WL 3136874, at *6 (because it is anticipated that children will age, a change in a child's age, alone, will not qualify as substantial and material change to warrant disruptive impact of modification of custody). New marriages may qualify if they are shown to affect the parent-child relationship, but the mere fact of remarriage is not sufficient. *Interest of E.M.*, No. 02-18-00351-CV, 2019 WL 2635565, at *7 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) ("Dad does not explain how Mom remarrying constitutes a material and substantial change."). Lee did not demonstrate how his or Samantha's new marriages, even coupled with Anna's older age, supported allowing Lee unsupervised, overnight visits, including international travel.

Lee testified that he wanted a fuller relationship with Anna, with lengthier visits and opportunities to travel together. But a parent's desire for a fuller relationship with a child is not a substantial and material change to warrant modification to remove a requirement that visits be supervised. *See In re S.N.Z.*, 421 S.W.3d 899, 911 (Tex. App.—Dallas 2014, pet. denied) ("Although Mother testified she would like to spend more time with S.N.Z., none of this testimony constitutes

13

evidence of the necessary material and substantial change in circumstances to justify a modification of the existing possession order" that required visits be supervised).

Samantha asserted that Lee's alcohol use and the behaviors he exhibited while intoxicated were the reason for supervised visits. Samantha argued that there was no evidence those circumstances had improved. She suggested that, if anything, Lee's drinking had worsened. Samantha submitted screenshots of dozens of Lee's Facebook posts, many of which centered on events at which he was visibly drinking or images of alcohol accompanied by Lee's posts speaking approvingly of alcohol.[4] Samantha argued that Lee did not show a substantial and material change in his relationship with alcohol or how the changes he cited relate to supervised visitation.

In addressing the scope of relevant evidence on the topic of Lee's drinking, the trial court noted Lee's burden to establish a substantial and material change:

> There was a charge before, he allegedly drank a lot, okay, and there was an injunction and it exists; right? So, has it changed? Does he drink now? Does he still drink in the same amount? That's what I need to know.

and later added,

---

[4] We will not detail these posts at length but appreciate the need to convey their tenor. Three representative examples follow. In one, there is a picture of a billboard advertisement for a liquor store. The sign reads, "A party without the alcohol is just a meeting." Lee's post, next to the image, reads, "Lol!! I Like it." In the second one, Lee shares a meme that reads, "Raise your hand if you've ever been personally victimized by whiskey." In the third, Lee posts a photo of an open multi-pack of beer in the backseat of a vehicle with the comment "Good to be home hehe."

14

What I need to hear is whether or not [Lee's drinking] is still happening. And if it's still happening, then there's no material and substantial change. If it's not happening, there is.

Lee testified about his drinking. It first came up when he was asked why he wanted the alcohol prohibition removed. He testified:

Because it's overreaching and it's never been necessary. I'm afraid that if it was to continue, the level that of, really, harassment in this case that's been going on towards me and my wife and her father, it would just be continued. It would put [Anna] in a precarious situation of maybe being a spy or being used as a fish for information. I worry that what it would do is create awkward situations and questions for her, and that it would enable Samantha and her husband to continue their battering of legal harassment that they've done so far.

In other words, Lee denied he had an alcohol problem in 2012 when he agreed to the supervised visits and alcohol prohibition. The 2012 custody decree, though, is res judicata on what provisions were in Anna's best interest at that time. *Knowles*, 437 S.W.2d at 817. A trial strategy to re-litigate the prior need for those provisions does not satisfy Lee's burden to demonstrate a substantial and material change after their implementation.

Lee testified that he has since passed pre-hire drug and alcohol tests. He also testified that alcohol is against the law in Saudi where he works a 35-days-on and 35-days-off schedule, meaning he does not drink for 35 days at a time. Lee was asked questions to compare his drinking consumption in 2012 to what it was in 2019 at the time of the hearing. He testified that, in 2012, he "sometimes drank too much" and, on average, would drink four days per week and be intoxicated about one or two

15

days per week. He testified that, in 2019, he would drink three days a week and be intoxicated about once per week, though "it's hard . . . to come up with an average because there's no consistency." This testimony failed to establish a substantial and material change in Lee's drinking.

During Lee's testimony, excerpts from his earlier deposition were read, and he confirmed their content. In one of the excerpts, Lee stated he would not agree to stop drinking completely in exchange for unsupervised visits. Lee maintained he did not, and never has, had an alcohol problem. Again, Lee's testimony failed to establish a substantial and material change.

Lee was asked another time what had changed since 2012. He stated that, in 2012, he had just gotten a DUI, lost his job, had his visa revoked, and moved back to Canada. By comparison, at the time of the 2019 hearing, he was living in Houston at a friend's house, had a job as a rig manager in Saudi Arabia that permitted 35 days off in a row to schedule and enjoy visits with Anna, and had remarried. These changes do not meet the threshold requirement of a substantial and material change related to the modification sought. Being remarried and living with a friend were not shown to relate to the need for supervision. Establishing that Lee has a job for which he must refrain from drinking 35 days in a row has little relationship to whether Lee would drink excessively while with Anna. In fact, the trial court received evidence

16

that Lee did drink during supervised visits with Anna: Lee admitted to two such incidents.

A custody order is res judicata as to the best interests of the child at the time the order is entered. *Id.* A parent may not re-litigate the need for various custody provisions at whim; instead, the parent must make a threshold showing of a substantial and material change in conditions to re-open the custody matter for modifications. *In re T.M.P.*, 417 S.W.3d at 463; *see Knowles*, 437 S.W.2d at 817 (noting Texas public policy of promoting a high degree of stability in children's homes and surroundings, that changes in custody have disturbing influences on children, and, resolving that, absent substantial and material changes, custody arrangements will not be altered). Lee failed to make that showing. His position was more in line with arguing he never had a drinking problem and had now reached the point he was willing and able to litigate the need for the custody limitations.

Because Lee did not make his threshold showing of a substantial and material change in circumstances related to the modification he sought, we conclude that the trial court abused its discretion in modifying the possession order.

**Conclusion**

We reverse and remand for additional proceedings.

Sarah Beth Landau
Justice

Panel consists of Justice Lloyd, Landau, and Countiss.