

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-24-00239-CV

**IN THE INTEREST OF E.N.E.P.**, a Child

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 22-646
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
H. Todd McCray, Justice

Delivered and Filed: May 7, 2025

REVERSED AND REMANDED

In this appeal, appellant Adela Suyapa Perez Castillo ("Mother") challenges the trial court's order denying her petition initiating a suit affecting the parent-child relationship ("SAPCR"). The child at the center of this dispute is E.N.E.P.[1]

We conclude that the SAPCR order is a final order; however, it is a final order that is contrary to this State's authority. Accordingly, we reverse the order and remand this matter to the trial court for further proceedings consistent with this opinion.

---

[1] Because E.N.E.P. is a minor, we will refer to her by her initials throughout this opinion.

**BACKGROUND**

Mother and E.N.E.P.'s presumed father, appellee Terencio De Jesus Espinoza Carcamo ("Father"), lived together in Honduras with E.N.E.P. from her birth until approximately 2013, when Mother moved to the United States seeking medical care for one of her other children. After Mother's move, E.N.E.P. remained in Honduras until 2019, when she came to live in the United States with Mother.

In November 2022, Mother filed her SAPCR petition seeking sole managing conservatorship over then-fourteen-year-old E.N.E.P. In her petition, Mother alleged it would not be in E.N.E.P.'s best interest for Father to be named possessory conservator nor be granted possession and access to E.N.E.P. based on allegations of Father's neglect and abandonment of E.N.E.P. Mother additionally alleged that there was a risk that Father would abduct E.N.E.P. In support of her SAPCR petition, Mother attached the following evidence: a refugee resettlement verification of release for E.N.E.P.; E.N.E.P.'s birth certificate; and affidavits from Mother and E.N.E.P. In lieu of service, Father signed a waiver of service and acknowledgment that he is E.N.E.P.'s father. Father's waiver appears in the record in both English and Spanish.

In Mother's affidavit, she attested that: she and Father were never married but lived together for six years, including from E.N.E.P.'s birth in 2008 until 2013; in 2013, Mother moved to the United States from Honduras for medical care for another one of her children; after Mother moved to the United States, E.N.E.P. continued living in the same house as Father under the care of Mother's niece; Father was an alcoholic, unpredictable, and scary, but not physically violent; Father never financially supported E.N.E.P. after Mother moved to the United States; when Father moved out of the home in Honduras, he never visited E.N.E.P. despite living in the same area with

his new family; and since E.N.E.P. moved to the United States in 2019, Mother has continued to care for E.N.E.P. financially and emotionally.

In E.N.E.P.'s affidavit, she swore that: she lived with Mother and Father for the first four years of her life; Father was absent from her childhood, and she only saw him a couple of times a month; Mother's niece took care of her when Mother moved to the United States; Father moved out of the home when she was five and began seeing another woman whom he married and started a family with; Father lived close to her with his new family but never visited nor provided for her; and that she feels happy and supported by Mother in the United States.

A final hearing was held in May 2023. During the hearing, Mother, testifying with the assistance of an interpreter, attempted to largely reassert the substance of her affidavit and, in addition to Mother's affidavit, the trial court admitted the evidence attached to Mother's petition into the record. Through her testimony, Mother requested the trial court appoint her as E.N.E.P.'s managing conservator, decline to appoint Father as a possessory conservator, and refrain from granting Father possession and access to E.N.E.P. Father did not appear at the hearing. After the hearing, the trial court signed an order stating, in full:

> On May 3, 2023, [Mother's] Petition for Conservatorship in Suit Affecting the Parent-Child Relationship to be [sic] considered and after hearing evidence and the accompanying exhibits, this Court is of the opinion that [Mother's] Petition for Conservatorship in Suit Affecting the Parent-Child Relationship should be DENIED.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Mother's] Petition for Conservatorship in Suit Affecting the Parent-Child Relationship is in all respects DENIED. All relief not expressly granted is denied.

The order did not name a managing conservator for E.N.E.P., nor state that it disposed of all parties and all claims and is appealable. The trial court did, however, file findings of fact and conclusions of law consistent with its order. In its findings and conclusions, the trial court

concluded "[t]here were many discrepancies between [Mother's] affidavit entered into evidence and the testimony provided" during the hearing. Mother appealed.

## STANDARD OF REVIEW

"Trial courts have wide discretion when deciding matters of custody, control, possession, support, or visitation, and we review such matters for an abuse of discretion." *In re J.A.V.*, No. 04-21-00084-CV, 2022 WL 379316, at *1 (Tex. App.—San Antonio Feb. 9, 2022, no pet.) (mem. op.). To determine whether a trial court has abused its discretion in a SAPCR proceeding, we engage in a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion. *In re T.K.D-H.*, 439 S.W.3d 473, 481 (Tex. App.—San Antonio 2014, no pet.); *In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.); *see also In re C.M.V.*, 479 S.W.3d 352, 358 (Tex. App.—El Paso 2015, no pet.). We consider challenges to the legal and factual sufficiency of the evidence as relevant factors in determining whether the trial court had sufficient information upon which to exercise its discretion under the first prong of our analysis, rather than as independent grounds of error. *See In re T.M.P.*, 417 S.W.3d at 563.

In determining whether there is legally sufficient evidence, we consider the evidence in the light most favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. *In re T.K.D-H.*, 439 S.W.3d at 481. When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *In re T.M.P.*, 417 S.W.3d at 563. When the evidence is conflicting, we must presume the fact finder resolved the inconsistency in favor of the order if a reasonable person could do so. *Id.*

The trial court is in the best position to observe the witnesses and their demeanor, and therefore, the trial court does not abuse its discretion if evidence of a substantive and probative character exists to support its decision. *Id.* We will only find that the trial court abused its discretion in determining a child's best interest if, in light of the evidence presented to it, the trial court acted arbitrarily or unreasonably, without reference to any guiding principles, or if it otherwise failed to correctly analyze the law. *Id.* at 562. Accordingly, the mere fact that we might have decided an issue differently than the trial court does not establish an abuse of discretion. *Id.* at 563. We may set aside a trial court's judgment only if its error "probably caused the rendition of an improper judgment, or probably prevented the appellant from properly presenting the case" to this court. TEX. R. APP. P. 44.1(a).

## DISCUSSION

In two appellate issues, Mother argues: (1) the trial court erred by rendering a final order that fails to include any of the statutory requirements provided in the Family Code; and (2) if we are to overrule her first issue, that several of the trial court's findings of fact and conclusions of law are not supported by sufficient evidence.

### Applicable Law

Before reaching Mother's first issue, we must answer a threshold question: is the trial court's order a final appealable order that disposes of all parties and all claims? If so, we have jurisdiction to review the issues presented in Mother's brief. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). If the answer is in the negative, the order is interlocutory, and we must dismiss this case for lack of jurisdiction. *See id.*; *In re K.K.M.*, No. 04-12-00677-CV, 2013 WL 820585, at *1 (Tex. App.—San Antonio Mar. 6, 2013, no pet.) (per curiam) (mem. op.). The Family Code and our jurisprudence guide our analysis.

"The Family Code establishes specific requirements for final orders in suits affecting the parent-child relationship." *In re R.R.K.*, 590 S.W.3d 535, 539 (Tex. 2019). "Entitled 'Contents of Final Order,' section 105.006(a) provides that a final order in a proceeding [to determine conservatorship] 'must contain' the parties' driver's license and social security information, current home and work addresses, and telephone numbers." *Id*. "Section 105.006(b) requires the trial court to include an order that each party notify the court, the other parties, and the state of changes in the party's identifying information, for as long as any party is . . . entitled to possession or access to the child." *Id*. "Section 105.006(d) further provides that final orders must prominently feature statutory warnings stating the legal consequences for failing to comply with the order[.]" *Id*. "The order must provide a statutory notice to peace officers of the order's enforceability." *Id*. at 539–40. "Section 105.006 thus provides a framework for what final orders must say in suits affecting the parent-child relationship." *Id*. at 540.

Additionally, final orders rendered under the Family Code must comport with notions of judicial finality. "There are two paths for an order to become a final judgment without a trial: the order can (1) dispose of all remaining parties and claims then before the court, regardless of its language; or (2) include unequivocal finality language that expressly disposes of all claims and parties." *Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d 816, 820 (Tex. 2024). "Although no 'magic language' is required, a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam) (citing *In re R.R.K.,* 590 S.W.3d at 543). If a trial court's order states that it is final, that it is appealable, and that it disposes of all parties and claims, then those recitations of finality must be accepted at face value and without reference to the record. *See id.*;

*Sealy Emergency Room*, 685 S.W.3d at 820 ("[A]n order need not be labeled a final judgment. Rather, an order constitutes a final judgment . . . when that order disposes of the last claim among the parties to the action."); *In re Elizondo*, 544 S.W.3d 824, 828 (Tex. 2018) (orig. proceeding) (per curiam); *In re E.N.D.*, No. 11-21-00040-CV, 2022 WL 401249, at \*7 (Tex. App.—Eastland Feb. 10, 2022, no pet.) (mem. op.) ("If the substance of an order amounts to a final decree, incidental labels are not controlling."). However, if "an order's finality is not 'clear and unequivocal,' then a reviewing court must examine the record to determine whether the trial court intended the order to be final." *In re R.R.K.*, 590 S.W.3d at 540.

*Analysis*

As quoted in full above, the trial court's order does not indicate finality on its face, and after an initial review of the record, we questioned the intent of the order's finality. The Texas Supreme Court has advised that if an appellate court is uncertain about the intent of an order to finally dispose of all claims and parties, it can abate the appeal to permit clarification by the trial court. *See Lehmann*, 39 S.W.3d at 206 ("If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court."). Texas Rule of Appellate Procedure 27.2 provides as follows:

> The appellate court may allow an appealed order that is not final to be modified so as to be made final and may allow the modified order and all proceedings relating to it to be included in a supplemental record.

TEX. R. APP. P. 27.2.

Accordingly, we abated this case and remanded it to the trial court for a period of thirty days so that the trial court could clarify whether the order was final and to modify its order so as to be made final, if the trial court was so inclined (the "Clarification order"). *See id.*; *Lehmann*, 39 S.W.3d at 206. The trial court timely filed a response; however, it did not substantively clarify

whether the order was intended to be, or not to be, final. Therefore, because the trial court's order is not final on its face, we further scrutinize the record to discern our jurisdiction.

In our review, we examined the entirety of the record, including Mother's SAPCR petition, the transcript of the final hearing, the trial court's order, the trial court's findings of fact and conclusions of law, and the trial court's response to our Clarification order. *See In re R.R.K.*, 590 S.W.3d at 540; TEX. R. APP. P. 27.2. In doing so, we acknowledge that: (1) all the relief sought by Mother in her SAPCR petition was at issue in the final hearing; (2) Father did not file any responsive pleadings or otherwise seek relief from the trial court; and (3) there is no indication that the parties or the trial court were severing claims or withholding a ruling on certain claims but not others. Additionally, the trial court's order contains a Mother Hubbard clause, which by no means is indicative of finality on its own, but, under these specific facts—given all relief sought the sole party seeking relief was at issue—shifts the balance towards finality. *Lehmann*, 39 S.W.3d at 204. Accordingly, after reviewing the entire record, we conclude that the trial court's order disposes of all claims and all parties and, therefore, the trial court's order is final and appealable. *See In re R.R.K.*, 590 S.W.3d at 540; *In re T.O.*, No. 02-20-00016-CV, 2020 WL 1808291, at *2 (Tex. App.—Fort Worth Apr. 9, 2020, orig. proceeding) (mem. op.) (concluding order was final although the order did not contain all the parties' identifying information and included a Mother Hubbard clause); *In re A.D.B.*, No. 05-19-01158-CV, 2021 WL 4771456, at *4 (Tex. App.—Dallas Sept. 8, 2021, no pet.) (mem. op.) (holding child support arrearage judgment containing indications of finality to be a final order).

Although we conclude the trial court's order is final and, therefore, we have jurisdiction, we ultimately hold that the trial court erred by rendering a final order that fails to satisfy any of the mandatory requirements of the Family Code. *See e.g.*, TEX. FAM. CODE § 105.006 (detailing

the requirements of a final order); *id.* § 153.005(a)(2) (requiring that "if the parents are or will be separated, [the court] shall appoint at least one managing conservator"). For example, the trial court's order fails to include the parties' applicable driver's license and social security information, current home and work addresses, and telephone numbers. *See id.* § 105.006(a). Likewise, because the parties are separated, the trial court was required to appoint one of the parents as E.N.E.P.'s managing conservator. *See id.* § 153.005(a)(2). And because the trial court was required to appoint a managing conservator, its order was required to contain certain statutory warnings, which the order does not. *See generally id.* § 105.006(d)–(e–2).

While an order lacking one or several of these requirements may survive appellate scrutiny under certain facts, the complete absence of any compliance with the statutory scheme, in this case, forbids such survival and inescapably hampers appellate review. In sum, the trial court's failure to include what the Family Code requires caused the rendition of an improper judgment and harmed Mother by preventing her from being able to present her case in this court. *See* TEX. R. APP. P. 44.1(a). The trial court should have provided Mother with a final order that substantively addresses the merits of the conservatorship issues. Without such an order, E.N.E.P. is without a managing conservator. Accordingly, the trial court erred by rendering a final order that wholly fails to comply with the mandatory authority of this State. Accordingly, we sustain Mother's first issue. Because we sustain Mother's first issue, it is unnecessary for us to address her second issue. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

Lori I. Valenzuela, Justice